## JAMES WESLEY ARMSTRONG v. STATE.

No. A-7374.  Opinion Filed July 5, 1930.
Rehearing Denied July 19, 1930.
(289 Pac. 1115.)

Howe & Douglass, for the plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was by information charged with the crime of murder, was tried and convicted of manslaughter in the second degree, and sentenced to serve a term of two years in the state penitentiary; from which judgment and sentence the defendant has appealed.

The substance of the testimony on behalf of the state is that on the night of the homicide, the 8th of July, 1928,

Ernest Ball, Turner Lawrence, Buster King, and the deceased attended a supper and dance at the home of the defendant's father, and remained there until some time between one o'clock a. m., and daylight, when they left the home of the defendant's father on their way to their respective homes, and got within a half mile of the home of the deceased when Buster King asked them to stop and talk a while; they got off their horses and turned them loose and sat down on the north side of the road, which at that point ran east and west, and while sitting there Ernest Ball, Turner Lawrence, and John Maynard were struck by an automobile.

The testimony further shows the defendant, accompanied by Ruth Crooks, Sammy Fulsom, and Bertha Crooks, left the place where the dance was going on after one o'clock a. m., drove several miles beyond the place where the killing took place, turned their car and started back toward the home of the Crooks girls; Ruth Crooks rode in Sammy Fulsom's lap during their journey, and Bertha sat between the defendant, who was driving the car, and Sammy Fulsom; Bertha Crooks had never driven a car, and the defendant was trying to teach her to drive; the defendant had been helping her keep the car in the road and stopped the car when necessary; the defendant knew Bertha Crooks did not know how to handle the car; that as they returned from their drive to take the Crooks girls home they came to where the boys were, and ran the car over the body of John Maynard, crushing him, from which injuries he died early Sunday morning.

There was some testimony to show that before they struck the boys they had struck a horse near where they ran over the boys; one of the Crooks girls says the car struck something and she fell out of the car, that she got up and caught up with the car and got back in the car

without it stopping, and she did not see what the car struck; the defendant took the girls home and went on home and went to bed. The defendant admits attending the dance, and leaving about one o'clock and driving several miles beyond where the deceased was injured; he admits he was teaching Bertha Crooks to drive the car, that she did not know how to handle the car; the defendant says at the time of the accident he was asleep and had been asleep for some time before the car hit the boys. Bertha and Ruth Crooks both testify that the defendant was asleep at the time the car struck the deceased, that they drove on near their home, when they got out and went back to the place where the accident occurred; the Crooks girls saying the defendant and Sammy Fulsom drove the car on away from the place where they got out.

The testimony further shows that at the time the defendant was arrested by the officers he was leaving his home and appeared to be in a drunken or dazed condition. The testimony in several instances is conflicting, but on the main points as to their being at the dance, and starting with the girls home in the car, and as to the deceased and his companions attending the dance, and sitting on the road, having gotten off their horses on the highway, and the car driven by the defendant or one of the girls, who the proof shows did not know how to drive the car, striking the boys and injuring the deceased, John Maynard, from the effects of which he died a short while afterwards, there is little conflict.

The defendant has assigned fourteen errors alleged to have been committed by the court in the trial of his case. The first assignment of error we will discuss is the third assignment of the defendant; that the court committed reversible error in overruling the demurrer of the defendant to the information. The first paragraph

of the demurrer is directed at the first count in the information, and it is argued that the same does not state facts sufficient.

Section 2558, C. O. S. 1921, provides:

"The indictment or information must charge but one offense; but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the same offense may be set forth in different forms or degrees under different counts; and where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count." Cochran v. State, 4 Okla. Cr. 379, 111 Pac. 974; Snoddy v. State, 30 Okla. Cr. 235, 235 Pac. 248.

This court has repeatedly held that the indictment or information, where it contains more than one count, must show upon its face that the separate counts are all based upon one and the same transaction. An examination of the information in this case clearly shows that both counts are based upon one and the same transaction. Sturgis v. State, 2 Okla. Cr. 362, 102 Pac. 57; Hughes v. State, 7 Okla. Cr. 117, 122 Pac. 554.

Section 2563, C. O. S. 1921, is as follows:

"The indictment or information is sufficient if it can be understood therefrom:

"First. That it is entitled in a court having authority to receive it, though the name of the court is not stated.

"Second. That it was found by a grand jury or presented by the county attorney of the county in which the court was held.

"Third. That the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with the statement that his true name is unknown.

"Fourth. That the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein.

"Fifth. That the offense was committed at some time prior to the time of filing the indictment or information.

"Sixth. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

"Seventh. That the act or omission charged as the offense, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction according to the right of the case."

Section 2564, C. O. S. 1921, is as follows:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

After a careful examination of the information in this case, we hold that the information stated facts sufficient to apprise the defendant of the charge against him, and that he was not deprived of his substantial right by failure of the information to advise him of the charge he was expected to meet. The court did not err in overruling the demurrer of the defendant to the information.

It is argued by the defendant that the facts proven in this case are not sufficient to sustain the proof of negligence, if any, and that the proof never arose to such a

degree as to amount to culpable negligence. The testimony in this case shows that the defendant was drinking the night of the dance and left the dance in company with the Crooks girls and Sammy Fulsom; that he knew Bertha Crooks did not know how to manage and drive the car; that they were on a public highway where pedestrians had a right to travel; that there were four parties riding in the one seat of the car, one of the girls in the lap of Sammy Fulsom and the other sitting in the seat; this was a crowded condition of the car; that the defendant was fully aware of the crowded condition of the car, and knew the girl attempting to drive the car was not familiar with driving and could not manage or handle the car. That the defendant had gone to sleep or had become stupid to a degree that he was not conscious as to what was going on around him; that he contributed to the accident by his carelessness and negligence in permitting the girl to try to handle the car when he knew that she could not do so.

The conflict in the testimony was a question for the jury to decide, and the jury decided that against the theory of the defendant, and decided that the defendant was guilty of manslaughter in the second degree, and fixed his punishment at two years in the penitentiary. The jury are the sole judges of the witnesses and the weight they will give their testimony, and, where the testimony is conflicting, this court will not disturb the verdict of the jury.

We have examined with a great deal of care the instructions of the court, and, when considered together in their entirety, they correctly stated the law applicable to the facts in this case. The defendant was accorded a fair and impartial trial. The information stated facts sufficient to advise the defendant of the charge that he was

expected to meet. Finding no errors of sufficient merit to warrant a reversal, the judgment is affirmed.

EDWARDS, P. J., concurs. CHAPPELL, J., not participating.