## PADGETT v. STATE.

No. A-11038.　　Jan. 4, 1950.

(213 P. 2d 580.)

270

John A. Cochran, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, Tommie Padgett, was charged by information in the court of common pleas of Tulsa county, Okla., with the commission of a misdemeanor, of being in unlawful possession of 16 pints and 3 fifths of tax-paid whisky in Tulsa county, Okla., on the 24th day of October, 1947. A jury was waived and the case was tried to the court, the defendant found guilty and sentenced to 60 days in jail and to pay a fine of $100, and judgment entered accordingly.

The defendant assigns numerous grounds for reversal in his petition in error, but it will only be necessary to consider assignment No. 3, to the effect that the court erred in overruling defendant's motion to suppress the evidence, the defendant contending it was obtained under an illegal search and seizure. The facts upon which this contention is based are in substance as follows to wit: Defendant had leased a vacant filling station in the city of Tulsa which he later opened and was operating at the time of the trial of this action. On the occasion in question he had driven his automobile onto the driveway thereof and was crawling into a window to inspect the interior of the premises. Officers Rains and Whisenhunt, deputy sheriffs, were driving past the station and saw the defendant's feet protruding from the window. They testified they suspected that a burglary might be in progress and turned around and came back to the station. The record shows they immediately recognized the defendant's car by the license tag and associated it with the defendant, and the whisky business. They saw an empty cardboard half carton with the word "whisky" on it up behind the back seat. They did not see any whisky. Nevertheless, they searched the automobile. The officers said they did not know a crime was being committed. They did not talk to the defendant before they searched his automobile, and they made no arrest of him prior to the search, as revealed by the following excerpt from the record:

"Q. You didn't know—I will ask you this, you suspected that a crime was being committed? A. Well, we thought maybe there might be something wrong there, there was a vacant building. Q. But you didn't know that a crime was being committed? A. No, that is why we turned around and went back down there, to see what was going on. We saw this man's feet and legs protrud-

ing from this station, crawling in through an open window. Q. Before you ever talked to the defendant, did you search his automobile? A. Yes, we saw a cardboard box up there in the back, could see the word 'whisky' on it, so then we proceeded to search, and called the defendant out there while the search was going on. Q. But you didn't arrest him prior to the search, did you? A. Well, we arrested him immediately after we found the whisky. Q. All right, but I want to ask you just what you saw in the automobile? A. Up in the back there was—this was the best I can remember, what they call a town sedan, and there is a back part up there. There was an empty—later turned out to be an empty carton, whisky carton, but when we saw that, we opened the door and on the floor of the car was a sack, one of these conventional zipper bags."

It therefore appears, when they recognized the car they suspected it would contain whisky, and that the operator thereof was in possession of whisky. The officers no longer entertained any idea of a burglary being committed. Seeing the half whisky carton (which the record shows the original carton had been sawed in halves) up above the back seat, they opened the car and began to search. The box they found to be empty. Notwithstanding the fact they found no whisky in the half carton or the box, and though fully aware that they could not detect by their five senses any evidence of whisky in the car, they continued to search the automobile without a warrant. Incident to the search so made they found some whisky in a zipper bag wrapped in a raincoat between the front seat and the front end of the car and two boxes containing whisky in the back end of the car. Thereupon they arrested the defendant for unlawful possession of whisky with the resulting charge and conviction herein complained of. To this showing the defendant interposed his motion to suppress the evidence.

Clearly, under the law, the motion should have been sustained.

In Reininger v. State, 59 Okla. Cr. 406, 60 P. 2d 629, the officers admitted they went to defendant's home and drove into his yard and up near his house; they had no warrant for his arrest or to search his premises or his car. (Such are the substantial admitted facts in the case at bar. The defendant was on his leased premises where he had a right to be and his automobile was parked thereon.) In the Reininger case the officers started on their search before anything was said to the defendant about making a search thereof. Such was the situation in the case at bar. Hence, we are not confronted with the question of a waiver of defendant's right to demand a search warrant. This court in the Reininger case said:

"Where the officer does not know of the act constituting the offense, it is not committed in his presence.

"The search of the car without a warrant of arrest or search warrant, or knowledge by the officer that it contained whisky, held illegal, and evidence should be excluded upon timely objection."

In Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433, 434, this court said:

"Where an offense is not a felony, an officer cannot arrest without a warrant, unless the offense was committed or attempted to be committed in officer's presence.

"A peace officer may arrest without a warrant in the case of a misdemeanor only where it is committed or attempted in his presence. And where the officer does not know of the act constituting the offense, it is not committed in his presence.

"Whether a search of or seizure from an automobile, * * * without a warrant, is or is not unreasonable with-

in the meaning of the constitutional provision, forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search or seizure is made."

See, also, Jones v. State, 82 Okla. Cr. 91, 166 P. 2d 443; Crim v. State, 78 Okla. Cr. 153, 145 P. 2d 444; Patty v. State, 74 Okla. Cr. 322, 125 P. 2d 784, 788, wherein this court said:

"This court has held in a great number of cases that the search of an automobile without a search warrant and not as an incident of a legal arrest, but upon a mere suspicion of the commission of a misdemeanor, is a violation of article 2, sec. 30, of the State Constitution, and that the evidence obtained by such unlawful search is inadmissible against the defendant. Whitford v. State, 35 Okla. Cr. 22, 247 P. 424; Bowen v. State, 50 Okla. Cr. 36, 295 P. 623; Mosier v. State, 59 Okla. Cr. 106, 56 P. 2d 908; Lamb v. State, 59 Okla. Cr. 360, 60 P. 2d 219; Bush v. State, 64 Okla. Cr. 161, 77 P. 2d 1184; Ketcham v. State, 63 Okla. Cr. 428, 75 P. 2d 1159; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433, 434."

Here, the search was not predicated upon an arrest either lawful or otherwise. It was based on suspicion from the start. It has been repeatedly held that suspicion cannot form the basis for a lawful search and seizure. In Evans v. State, 71 Okla. Cr. 239, 110 P. 2d 621, this court said:

"An automobile is not such an agency that officers may search it at any time or place merely because they have suspicion that liquor is stored therein.

"The search would be illegal unless the officer procures a search warrant for said vehicle or an offense is being committed in the presence of the officer that would justify the arrest of the person in the possession of the automobile.

"As a rule two elements must concur to constitute an offense in the presence of the officer: (1) The facts or elements constituting the offense must be revealed in the presence of the officer. (2) The officer must perceive and have knowledge that such offense is being committed."

In the case at bar the officers at no time before the search could detect by the aid of their five senses that the automobile contained whisky. They therefore had no knowledge that a misdemeanor was being committed in their presence before the search. This case should not be confused with Griffin v. State, 90 Okla. Cr. 90, 210 P. 2d 671, wherein the search and seizure was predicated and sustained on the proposition that the words "whisky" and "distillery" were seen on a full, unbroken, sealed carton as the same came from the distillery, labeled as provided by law, and seen as the carton was being delivered by a wholesale bootlegger to a retail bootlegger. The situation therein was different from that herein involving a broken, empty half carton. The two cases are clearly distinguishable and should not be confused. The discovery of the whisky herein involved being made as the result of an unwarranted search, based upon mere suspicion, not made incident to a lawful arrest, the evidence thus obtained would not be admissible. The discovery of the whisky would not validate a search unlawful from the beginning. The search must be justified by the steps that precede it, and these steps must be lawful in their entirety. Edwards v. State, 83 Okla. Cr. 340, 177 P. 2d 143. The evidence in this case being secured by an unlawful search and seizure contrary to the provisions of § 30, art. 2 of the Constitution (Bill of Rights) was improperly received in evidence, and timely objection being made thereto in the defendant's motion to suppress should have been sustained. The evidence herein involved

was therefore improperly received in evidence. This case is accordingly reversed and remanded, with directions to dismiss.

JONES, P. J., and POWELL, J., concur.