## LANDRUM v. STATE.

No. A-11688. March 25, 1953.

(255 P. 2d 525.)

S. S. Lawrence, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and A. M. Widdows, City Atty, Tulsa, for defendant in error.

POWELL, P. J. Preston Landrum was charged in the municipal criminal court of the city of Tulsa with the crime of lewdness, was tried before the court, a jury being waived, was convicted, and his punishment fixed at one year confinement in the Tulsa county jail. Appeal has been perfected to this court.

For reversal counsel urges the proposition that "the section of the statutes upon which this prosecution is based, supra, does not in any way make the action of the plaintiff in error [who will be referred to as defendant] at the time he was apprehended and charged, guilty of any crime whatsoever, for the reason that he was not in a public place, and there is no suggestion of indecent exposure or a sex crime."

Counsel concludes his argument with the statement that there was no evidence to support the judgment rendered and that it was evidently the result of passion and prejudice by reason of the defendant being a Negro. Counsel further states, "I will agree that the alleged conduct of the accused is reprehensible and nauseating, but I firmly and honestly contend under the statutes above quoted, that it is impossible to find the accused guilty of a crime." The issues raised come about by reason of the overruling by the trial court of the demurrer to the information, and a demurrer to the evidence. No authorities are cited except the statute under which the charge was instituted, Tit. 21 O.S. 1951 § 1029, and the statutory definition of lewdness, Tit. 21 O.S. 1951 § 1030, all to be quoted hereinafter. We do not find where this court has heretofore construed the statutes in question. We consider detailed treatment justified.

The charging part of the information sets out that:

"On or about the 7th day of July, 1951, within the corporate limits of the city of Tulsa, Tulsa County, Oklahoma, in a building at 114 West Fourth Street, Preston Landrum, the above named defendant, did then and there unlawfully and wrongfully commit an act of lewdness, in that said defendant, being a negro, was holding the right breast of Isabel V. Miller, a white woman, and that the said defendant was caressing and kissing said Isabel V. Miller, in violation of Section

1029, Title 21 of the Revised Statutes of the State of Oklahoma, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma."

Section 1029 of Title 21, O.S. 1951, reads:

"It shall further be unlawful:

"(a) To engage in prostitution, lewdness, or assignation;

"(b) To solicit, induce, entice, or procure another to commit an act of lewdness, assignation, or prostitution, with himself or herself;

"(c) To reside in, enter, or remain in any house, place, building, or other structure, or to enter or remain in any vehicle, trailer, or other conveyance for the purpose of prostitution, lewdness, or assignation;

"(d) To aid, abet, or participate in the doing of any of the acts herein prohibited."

And section 1030 of Title 21 reads:

"The term 'prostitution' as used in this Act [Sections 1028-1030 of this Title] shall be construed to include the giving or receiving of the body for sexual intercourse for hire, and shall also be construed to include the giving or receiving of the body for indiscriminate sexual intercourse without hire. That the term 'lewdness' shall be construed to include the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement."

The defendant filed a general demurrer to the information, and which the court overruled. We find no error in the action of the court in that it is our conclusion that the information sets forth the act charged in ordinary and concise language without repetition, and in such a manner as to enable a person of common understanding to know what is charged. Tit. 22 O.S. 1951 §§ 409, 410; Group v. State, 94 Okla. Cr. 401, 236 P. 2d 997; Armstrong v. State, 48 Okla. Cr. 146, 289 P. 1115; 160 A.L.R. 516. A fuller consideration will be developed as we proceed further.

Counsel thereafter and prior to trial interposed an oral motion praying the court to order stricken from the information, beginning with the word in the final clause following "lewdness", as follows: "In that defendant, being a negro, was holding the right breast of Isabel V. Miller, a white woman." The court overruled the motion. By section 387 of Title 33, O.S. 1951, it is provided:

"All forms of pleading in criminal actions, and rules by which the sufficiency of pleadings is to be determined are those prescribed by this code." Section 492 of the same Title provides that on arraignment an accused may in answer to the arraignment either move the court to set aside the indictment, or information, or may demur or plead thereto, and Section 502 of the Title states: "The only pleading on the part of the defendant is either a demurrer or a plea."[1]

While we find nothing in the statutory provisions providing for a motion to strike, yet if an indictment or information contains allegations not necessary in stating the offense with which the accused stands charged, and that are made apparently for the purpose of injecting passion and prejudice against the accused, such matters should be stricken by the court on its own motion, where noticed, or on motion of the accused, but any such motion should be interposed prior to plea or the filing of a demurrer. Par. 51, p. 89, Abbott, Criminal Trial Practice, 4th Ed. A motion, of course, by its very nature is not a pleading but simply is for the purpose of obtaining an order from the court. To have stricken out the

---

[1] For a comprehensive treatment of the different pleas other than a plea of "not guilty" or of "guilty", see Chapters VIII and IX, Abbott, Criminal Trial Practice, 4th Ed. (1949). See also Scribner v. State, 9 Okla. Cr. 465, 132 P. 933, 949.

allegation that the defendant was holding the right breast of the woman would have rendered invalid the information. We conclude that the court should have stricken the word "negro" and required the substitution of the word "man" and should have stricken the word "white" preceding the word "woman". Otherwise, the allegation was a proper one charging the offense of lewdness under the two statutory provisions above quoted.

A close reading of Tit. 21 O.S. 1951 §§ 1029 and 1030, will disclose that the purpose of the statute is to punish persons for sex acts, and is not limited but is applicable to both the male and the female sex, male with female, or male with male, or female with female. The color or race of the participants is not involved in a consideration of the charge. It would not make any difference under the statute whether the participants were all white, all black, or white and black, as in this case.

The action of the court in not striking the two words indicated does not, however, constitute reversible error. The words amounted only to surplusage, and we mean by "surplusage" allegations of matter wholly foreign and impertinent to the case. Wood v. State, 3 Okla. Cr. 553, 107 P. 937; and see par. 69, p. 161, Abbott, Criminal Trial Practice, 4th edition.

If the case had been tried to a jury, the jury from the evidence would have discovered the difference in the race of the participants involved in the acts set out as lewd conduct. The accused possibly would have been entitled to an instruction by the court to the effect that the fact of the difference in the color of the parties involved in the charge could not be taken into consideration in the determination of the guilt or innocence of the person charged, and if found guilty, in the amount of punishment that might be assessed.

There is no provision in the sections of the statutes, heretofore quoted, that specify that the act of lewdness must take place in a public place, as is required by section 1021 of the same Title, to sustain a charge of indecent exposure. The sections of the statute in question appear as part of Chapter 39, of Title 21, O.S. 1951, having to do with indecent exposure, obscenity, lewdness, and disorderly houses, sections 1021 to 1031, inclusive, of the Title. It will be noted from an examination of the various sections, except those under which the within charge was filed, that they were in force in the Territory prior to statehood, being adopted from Dakota Territory; but sections 1029 and 1030 were only enacted in 1943. It is significant that the prior provisions though aimed at the suppression of sexual vices were apparently not deemed sufficient to accomplish the overall objective, and hence the enactment of the sections now being considered.

As has often been repeated by this court and the Supreme Court of this state, the fundamental rule of construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. And as we stated in Magnolia Pipe Line Co. v. State, 95 Okla. Cr. 193, 243 P. 2d 369, 372:

"To ascertain the intention of the Legislature in the enactment of statute, the court may look to each part of statute, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation."

See, also, State v. Stegall, 96 Okla. Cr. 281, 253 P. 2d 183, and cases cited.

With the wording and apparent purpose of the various other provisions of Chapter 39 in mind, as in the sections expressed, and with the above principles to guide, we will proceed with the consideration of the sections under which the within charge was filed.

With reference to the meaning of the term "lewdness" secton 1030, supra, as we have seen, provides: "That the term 'lewdness' shall be construed *to include* the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement." (Emphasis supplied.)

It will be noted that no attempt is made to specifically define the term "lewdness" or limit the definition, but it is merely specified that the term shall be construed to *include*, etc. In McKinley v. State, 33 Okla. Cr. 434, 244 P. 208, in the body of the opinion, it is stated:

"The words 'lewd' and 'lascivious,' when used in a statute to define an offense, usually have the same meaning, to wit, an unlawful indulgence in lust; eager for sexual indulgence." See supporting authorities cited. Roget's International Thesaurus, New Edition, defines lewdness as " * * * sensuality, * * * lust, passion, sensuous, desire, heat, rut, etc."

Under the common law it was not a crime for men and women to engage in fornication, prostitution, or other immoral practices in private. State v. Baldino, 11 N.J. Super. 158, 78 A. 2d 95. But it seems to be the general rule in the United States, even where the charge is for open and gross lewdness and lascivious behavior, that it is used in a broader sense and means irregular indulgence in lust, whether public or private. State v. Baldino, supra. Under the "open lewdness" statutes, it is only necessary that there be present elements making the act shameless, aggressive, and defiant, rather than furtive and hiding away in shame. Lewdness being deemed open when committed in the presence of another person, or in a place open to public view. State v. Pedigo, 190 Mo. App. 293, 176 S.W. 556, 557; Commonwealth v. Wardell, 128 Mass. 52, 54, 35 Am. Rep. 357; Commonwealth v. Lambert, 12 Allen, Mass., 177, 179; Commonwealth v. Porter, 237 Mass. 1, 129 N.E. 298.

If the accused, a male, was holding or fondling the right breast of a woman, and caressing and kissing her on the neck, while in a building at 114 West Fourth street, Tulsa, as in the information charged, the information was sufficient to charge an act of lewdness under Tit. 21 O.S. 1951 § 1029.

This brings us to a consideration of the evidence.

The state used two witnesses. M. W. Still testified that he had lived in Tulsa all of his life; that he was a baker with the Continental Baking Company; that on July 7, 1951, he was behind the Fourth National Bank at Fourth and Boulder in Tulsa, near a little white building behind it on the west side of the alley; that he had his car parked there, and went to put some packages in the car and saw a white woman, later learned to be Mrs. Isabel Miller, come down the stairs of the white building, and that she and the defendant were holding on to each other, and with their arms around each other; that a "Your Cab" drove up and that the woman tried to put the defendant in the cab but he did not want to go, so the cab drove off; that the women started back up the stairs and the defendant got in a parked Chevrolet truck, started the motor; that witness got in his own car and waited to see what was going to happen and that the defendant backed up and was about to crash into his car, so he honked and the defendant then stopped the truck, got out and went back up the stairs. Witness 'phoned the officers.

Lawrence W. Payne testified that he was an officer in the Tulsa Police Department and that in response to an order he received from the police department he proceeded to the premises above referred to and there contacted Mr. Still, and ascertained that the defendant and Mrs. Miller had gone back up stairs in the building located in the 400 block of West Fourth Street, Tulsa. He then testified that he went up stairs in the building to a lawyer's office, which he learned later was Mrs. Miller's office, and that he looked in the office and saw Mrs. Miller

sitting behind, or kind of lying over on the desk, and the defendant was playing with her right breast and kissing her on the neck, and that both the defendant and Mrs. Miller were definitely drunk, and they started to take the defendant out of the office and got him to the head of the stairs, when Mrs. Miller threw a vase at him and Officers Gott and Melton, and broke it over their heads. Mr. Payne further testified that the law office where the offense occurred was not a private place.

The court overruled defendant's demurrer interposed to the above evidence.

We have already determined that under the provisions of section 1029 of Title 21, O.S. 1951, it was not necessary that the act of lewdness be in a public place. The act could, however, be in a public place, and in the within case was, in that the woman and defendant were upstairs in a white building in the 400 block of West Fourth street, Tulsa, in a lawyers' office,[2] the woman "lying over on the desk" and the defendant with his hand around her playing with or fondling her right breast and kissing her on the neck.

And while we have determined that under the statute, the fact that the woman was white and the man black could have no bearing on the wording of the information, nevertheless, to see a white woman and Negro man on the street with their arms around each other and staggering about, as the evidence disclosed in this case, could be calculated to cause shock, consternation and chagrin to well up in many persons of the public, and more so than if the parties were of one race. But no more so than if the man had been white and the woman black, or say all parties of the same race but the man aged and the female a mere child, or the woman aged and the male a mere boy. Anything that flouts propriety, morals, is unusual, is against social custom, or violates the law of nature, is bound to cause more than the usual interest. The conduct of the parties in this case did shock witness Still and he telephoned the officers. The offense is made a misdemeanor, Tit. 21 O.S. 1951 § 1031, and the officers did not have a search warrant but on reaching the second floor of the building where an attorney's office was located did observe the defendant and the woman as heretofore detailed. No motion to suppress, or claim of false arrest was interposed, so that we must assume that the office was open. The motion for new trial contains an allegation that arising out of the facts developed in this case and at the same time and place, the defendant was charged with being drunk in a public place, entered a plea of guilty and paid a fine. The charge here and the charge for drunkenness, both being misdemeanors, the officers in absence of a warrant could not have arrested defendant for such misdemeanors committed out of the presence of the officers. Tit. 22 O.S. 1951 § 196; Lyons v. Worley, 152 Okla. 57, 4 P. 2d 3; Coffey v. State, 38 Okla. Cr. 91, 258 P. 923; Gaines v. State, 28 Okla. Cr. 353, 230 P. 946; Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603; Padgett v. State, 90 Okla. Cr. 269, 213 P 2d 580. So that the arrests for the respective offenses were bound to have been on account of the observance of the arresting officers of the acts taking place in the law office, rather than for acts reported to them as having taken place in the street.

There was ample evidence to justify the judgment of the court finding the defendant guilty of the crime charged. The argument of counsel for defendant that the acts recounted did not violate the sections of the statute quoted and did not amount to lewdness and that there is no suggestion of a sex crime is not

2 It has been held that a lawyer's office may be a public place during the usual hours of business, Parker v. State, 26 Tex. 204, 207; that a hotel office is a public place, Goodwin v. Georgia Hotel Co., 197 Wash. 173, 84 P. 2d 681, 684, 119 A.L.R. 788; that an office of manufacturer of medicine is a public place, Gomprecht v. State, 36 Tex. Cr. App., 434, 37 S. W. 734; and that the office of a county clerk is a public place, Gregory v. Hubard, 123 Va. 510, 96 S. E. 775. See also State v. Sowers, 52 Ind. 311, 312; Cahoon v. Coe, 57 N. H. 556, 595; Territory v. Lannon, 9 Mont. 1, 22 P. 495.

tenable. Such argument can only be accounted for by the partisanship of an advocate. Two persons meeting and kissing or lovers arm in arm and petting but showing high respect each for the other is one thing, and sensual acts as shown by the evidence in the within case is another. The first illustration may be elevating, while the latter is definitely degrading, and as even admitted by counsel, nauseating. The position of the woman on the desk and the acts of the defendant could only be calculated to arouse the sensual and lustful passion of the parties, and the compelling presumption is that the conduct was the natural prelude to forthcoming sexual relations that was only interrupted by the appearance of the officers.

We must notice a matter sufficiently raised in the petition in error but not argued in brief. We find that the record shows that at the time the court went to assess the punishment, he asked the city attorney what he knew about the defendant, and he proceeded to tell the court about the white woman having been the wife of a Tulsa lawyer and about her having previously been in episodes with this Negro man, etc. The court thereupon assessed the maximum penalty. It would seem that the woman was more at fault in willingly permitting herself to be the recipient of the lewd attentions of the defendant than the defendant. It does not appear that she was charged. It does appear that other charges arising out of the affair were filed against the defendant. To have permitted a jury to have heard evidence of other episodes between the white woman and Negro, where there was not a conviction and where he did not testify, would have constituted reversible error. Ordinarily, a court is presumed to discard the irrelevant, and consider only the relevant matters in determining the amount of punishment to assess, either on a plea of guilty or after trial without a jury. And while the evidence would certainly justify the maximum punishment, still it appears that every charge possible was filed against the defendant arising out of the matters shown here. We cannot help but feel that the court, having learned from the competent evidence the shocking conduct of the white woman and colored man, might have been impelled to and did on learning of the additional past conduct of the parties, consider the case an aggravated one, and by reason of the incompetent matters, assessed punishment greater than he otherwise might have assessed. In the petition in error it is alleged that the outcome of the case was the result of passion and prejudice which is the poison possibly at the bottom of most of the ills of the world. The assertion cannot be lightly entertained. This court must consider all matters coming before it objectively. And in so doing, it is better that an error in judgment be made in favor of the accused, rather than against him, and for such reason and in the interest of justice, it is our thought that the jail sentence should be modified from one year in the county jail to six months in the county jail, and as so modified, the judgment and sentence of the municipal criminal court of the city of Tulsa is affirmed. Tit. 22 O.S. 1951 § 1066.

JONES and BRETT, JJ., concur.