The defendant, Walter Washington, was charged in the district court of Pottawatomie county with the crime of murder; was tried, convicted of manslaughter in the first degree, and sentenced to serve 20 years in the State Penitentiary, in accordance with the verdict of the jury.
The defendant, a full-blood Indian, shot and killed the deceased, William Tyner, another Indian, on the farm of the defendant on August 23, 1931. Claudius Tyner, father of the deceased, had separated from his wife and had been living with the defendant for a few weeks prior to the homicide. On the date of the homicide, the deceased, accompanied by some other Indians, came from his home near Cushing, to a stomp dance near Shawnee. There they met the defendant. Their relations were friendly. The deceased inquired of the defendant about his father who did not come to the stomp dance, but had remained at the home of the defendant. Later in the day, the deceased, the defendant, and some other Indians, who were eyewitnesses to the tragedy, drove to the home of the defendant so that the deceased could talk to his father and try to persuade him to return home with the deceased. When they arrived at the home of the defendant, all of the parties commenced drinking homebrew which the defendant had made. According to all of the evidence, both the deceased and the defendant showed the effects of the drinking. Some scuffling occurred between deceased and his father. *Page 303 
According to the evidence of the witnesses for the state, while the deceased and his father were scuffling, the defendant joined in the scuffle on behalf of the father, and got the deceased on the ground. While the deceased was lying on the ground, the defendant told him he was going to kill him. That the defendant got up from the ground, went to his house, returned with a shotgun, went to where all of the parties were standing, and said, "Stand back, or I'll shoot." That he then fired the shotgun, striking the deceased, from the effects of which shot he died in about an hour.
The testimony of the state showed that at the time the shot was fired, the deceased and his father had stopped their scuffling and were standing drinking another bottle of homebrew, when the defendant returned with his shotgun. That the deceased was making no overt act towards defendant or any other person at the time the shot was fired.
The defendant testified to substantially the same facts related by the witnesses for the state down to the point where the scuffle occurred between the deceased and his father. The defendant testified that he and Bill Grass, another Indian, separated the deceased and his father, and that he told the deceased to leave his premises. That the deceased then picked up a tooth from a buck-rake and struck him over the head with it. That he again told the deceased to leave, that he was going to get his gun. In this connection, the defendant testified on direct examination as follows:
"I said, 'William, you'd better leave. You came down here and raise trouble.' I told him that about three times and he didn't leave, so I told him I was going after my gun. I got so mad so I went and got my gun and he met me out there, and I told him to get back. He *Page 304 
didn't stop, so I thought I'd shoot and scare him. About that time, he threw a rock, and I think it knocked my hat off. About that time I fired the gun, but I didn't think I hit him, so then I went back down to the house and sat down, and after a while the women folks drove up. Then, I guess they loaded him up and took him off. I didn't know I hit the fellow until the next morning when Mother came down and told me I had killed William Tyner. Q. Is that the first you knew that you had killed him? A. Yes. Q. Walter, did you go get that gun to kill him? A. Yes, I went down * * *"
There is no contention that the evidence is insufficient to sustain the conviction. The foregoing brief summary of the case is presented for the reason that the evidence should be considered in determining one of the propositions presented by the defendant that the unnecessarily long delay in trying him for this alleged crime prevented him from fairly presenting his case and was a denial of justice.
Two propositions of law are presented for a reversal of this case: (1) Error of the court in overruling defendant's motion to dismiss the case for laches on the part of the state in presenting the prosecution. (2) Error of the court in overruling objections by counsel for defendant to questions asked defendant on cross-examination.
In connection with the first proposition, it was shown that shortly after the homicide was committed in 1931, an information was filed in case No. 3523, in the district court of Pottawatomie county. That on November 27, 1932, the case was tried, and a jury disagreed as to the guilt of the defendant. That said cause was never reset for trial, and that on January 5, 1935, the case was dismissed on motion of the county attorney for lack of evidence *Page 305 
by the district court. The information under which this conviction was secured was filed on August 28, 1942. The case was regularly set for trial on September 23, 1942. Prior to the date of trial, the defendant filed a motion to dismiss and presented evidence in support of said motion, showing the facts in connection with the alleged delay in the trial as herein above recited. This motion was overruled, and the case proceeded to trial, resulting in the conviction of the defendant.
The statutes pertaining to a dismissal involved in this action are as follows:
"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." 22 O. S. 1941 § 812.
"If the court direct the action to be dismissed, the defendant must, if in custody, be discharged therefrom, or if admitted to bail, his bail is exonerated, or money deposited instead of bail must be refunded to him." 22 O. S. 1941 § 814.
"The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be entered upon the minutes." 22 O. S. 1941 § 815.
"An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense." 22 O. S. 1941 § 817.
The prosecution for ordinary criminal offenses must commence within three years after the crime is committed, but a prosecution for murder may be commenced at any *Page 306 
time after the death of the person killed. 22 O. S. 1941 §§ 151, 152.
We have just recently had under consideration the applicability of the above statute in a murder case where the accused had sought dismissal of the prosecution because of the denial of his constitutional right to a speedy trial. Brummitt v. Higgins, 80 Okla. Cr. 183, 157 P.2d 922. In that case, the prosecution for murder was ordered dismissed because of unnecessary delay in trying the defendant, the defendant being incarcerated and demanding trial at each of several terms of court which passed without his being tried. It was therein stated that the dismissal was not a bar to the filing of another prosecution for the same offense, when brought within the statutory period, citing 22 O. S. 1941 § 817, supra; Ex parte Warrenburg, 63 Okla. Cr. 125, 73 P.2d 476.
Since there is no limitation on the time within which a prosecution for murder may be instituted, the dismissal of a prosecution will not bar the institution of another prosecution at any time the state might feel that the proof of the guilt of the accused is ready to be produced.
In Ex parte Warrenburg, supra, this question was discussed at length and the authorities from various jurisdictions thoroughly analyzed. In the body of the opinion, the court quoted from the case of Ex parte Clarke, 54 Cal. 412, as follows [63 Okla. Cr. 125, 73 P.2d 479]:
"But the order dismissing the prosecution ends the action commenced by the complaint upon which the magistrate issued his warrant of arrest. It ends the action, however, not by any judgment upon the merits of the case, but by an order in the nature of a judgment of nonsuit, a simple expression of the opinion of the court that that particular proceeding ought not to be further prosecuted. Inasmuch as there is no limitation of time *Page 307 
applicable to prosecutions for murder, and as a defendant in whose favor an order of dismissal of the action has been made has never been put in jeopardy within the meaning of the Constitution, a new action on behalf of the people may, in such case, be initiated at any subsequent day, either by presentment of a grand jury or by a complaint filed with any magistrate."
Further in the opinion, in discussing a statute similar to ours, providing for the dismissal of the prosecution where the accused is not brought to trial within a certain period of time, the court stated:
"The discharge of Rochelle . . . cannot, upon any sound principle, be considered as an acquittal from the charge so as to bar a subsequent prosecution for the same offense. The act was made to secure the citizens of the state from vexatious arrests and imprisonments, and not to protect them from prosecutions for crimes actually committed. The act in favor of liberty was sufficient to operate the discharge of the prisoner Rochelle from his former imprisonment when the state officer was not ready to produce the proofs of his guilt, but it would be monstrous to say that such a discharge should shield him from a subsequent prosecution, when the proofs of his guilt are ready to be produced."
See, also, Ex parte Menner, 35 Okla. Cr. 252, 250 P. 541; Bayne v. State, 48 Okla. Cr. 195, 290 P. 354.
It appears from the foregoing that the motion to dismiss was correctly overruled. As to the prejudicial effect on the defendant of the unusual delay in the prosecution, after the date of the homicide, we shall discuss that in connection with another proposition as to the amount of punishment which was assessed.
It is next contended that the court erred in admitting certain evidence which prejudiced the defendant. On cross-examination of the defendant, the county attorney *Page 308 
inquired concerning a conviction for a felony which the accused had sustained. The conviction was in a liquor case in the federal court. The contention of the defendant is that the state was attempting to attack the character of the defendant without the defendant's putting his character in issue, and, further, was attempting to prove other crimes which were collateral and wholly irrelevant to the specific act charged.
This contention is without merit. It is provided by statute that a witness may be asked on cross-examination, for the purpose of affecting his credibility as a witness, whether he has ever been convicted of a crime. 12 O. S. 1941 § 381; Pryor v. State, 51 Okla. Cr. 345, 1 P.2d 797; Graham v. State,80 Okla. Cr. 159, 157 P.2d 758.
When the defendant elected to testify, he occupied the same position as any other witness and for the purpose of affecting his credibility only, inquiry may be made as to any crimes of which he might have been convicted.
At the trial of the case, the defendant made a showing that at the former trial had in 1932, Claudius Tyner, the father of the deceased, testified on behalf of the defendant; that subsequent thereto in 1935, the said Claudius Tyner, father of the deceased, died. That the court reporter who had reported the first trial was unable to find any notes pertaining to the evidence taken at said trial and, therefore, he was unable to furnish a transcript of the evidence of the said Claudius Tyner. This showing was made as a part of the contention of the defendant that the case should be dismissed on the theory that the unusual delay in the prosecution seriously affected the defendant's rights because his principal witness had died. We are impressed with the forcefulness of this *Page 309 
argument and the fact that at the former trial when this witness had testified, the jury disagreed upon its verdict and was discharged.
However, a careful study of this record impels one to conclude that the accused is guilty of manslaughter in the first degree under his own testimony. The witness, Claudius Tyner, certainly would not testify to facts more favorable to the defendant than those which the defendant himself related. The defendant testified that he left the place where they had been scuffling near his barn and walked over a hundred yards to his house, procured his shotgun, loaded it with three shells, and voluntarily returned to the scene where he fired the fatal shot. Under the testimony of all the witnesses, except that of the defendant, the deceased was committing no overt act at the time the fatal shot was fired. The defendant himself simply states that the deceased refused to leave his place and threw a rock at him when he pointed his gun and directed the deceased to leave.
Under such circumstances, ordinarily this court would not interfere with the punishment of 20 years' imprisonment assessed the defendant, but because there was a delay of 11 years from the time the act was committed until the defendant was brought to trial upon the second complaint which was filed, and that the testimony of his principal witness could not be produced because of the death of the witness and the inability of the reporter to find his shorthand notes, we feel that justice requires a modification of the sentence imposed to a term of 10 years' imprisonment in the State Penitentiary.
It is therefore, ordered that the judgment and sentence of the district court of Pottawatomie county is modified by reducing the sentence from 20 years' imprisonment *Page 310 
in the State Penitentiary to 10 years imprisonment in the State Penitentiary, and the judgment and sentence as thus modified is affirmed.
BAREFOOT, P. J., concurs. DOYLE, J., not participating.