**Donald Eugene ROBINSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17141.**

Court of Criminal Appeals of Oklahoma.

March 16, 1973.

Rehearing Denied April 6, 1973.

Stephen Jones and Tom Williams, Enid, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Donald Eugene Robinson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Possession of Marijuana, After Former Conviction of a Felony, Case No. CRF–71–178. His punishment was fixed at twenty (20) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, George A. "Buddy" Burns testified for the State that on January 20, 1971, he received a call from a Mrs. Montgomery who related that the defendant had brought some marijuana by her house and that he (the defendant) would contact her the next day. On January 21 at approximately 7:00 p. m. Mrs. Montgomery again contacted Detective Burns and informed him that the defendant had been by her house with a small amount of marijuana, that he had just left to go to Norman to pick up a "Mother Load" and that defendant was to return later that evening and they would smoke some. At approximately 9:30 p. m. Mrs. Montgomery again called and related that the defendant was on his way over. Detective Burns instructed Mrs. Montgomery that she was to leave the south window of the residence open and a light on inside. He further told her to get word to him in any way she could as to whether the defendant had marijuana with him.

At this point Detectives Burns and Scott and Lt. Meade proceeded to Mrs. Montgomery's residence to set up a surveillance. Detective Scott stationed himself at the south side of the house near the open window. Detective Burns and Lt. Meade parked the car around the corner and remained there. The defendant arrived at the house at approximately 9:45. Detective Burns testified that the defendant parked in front of the residence, got out of the vehicle and walked to the front porch carrying a small paper sack. A few moments after he had entered, Mrs. Montgomery left the house, walked around the corner to where Detective Burns had parked, and informed him that the defendant had marijuana with him. At this time Detective Burns informed Mrs. Montgomery that he would call in a short time and advise her to have the defendant leave. Mrs. Montgomery then returned to the house while Detective Burns joined Detective Scott at the south side of the house near the open window.

Detective Burns then testified that they saw the defendant reach into the sack and withdraw two plastic bags containing a green leafy material resembling marijuana. He then withdrew cigarette papers from the bag and hand-rolled two cigarettes using the green leafy substance which he and Mrs. Montgomery then smoked. Detective Burns testified that he detected the odor of burning marijuana, that defendant then got down on his hands and knees, crawled across the room, and attempted to commit oral sodomy with Mrs. Montgomery.

It was at approximately 10:05, Detective Burns testified, that he left the south side of the house, went to the corner, called Mrs. Montgomery and instructed her to have the defendant leave. Defendant subsequently left, carrying with him the sack that he came with. When defendant reached his car, Detective Burns and Scott and Lt. Meade approached him. He threw the sack down and kicked it under the car. The defendant was then arrested and the paper sack seized.

Detective Scott's testimony was substantially the same as that of Detective Burns.

Both parties stipulated that the Oklahoma State Chemist would have testified,

had he been called, that the evidence that he analyzed in this case was marijuana.

The defendant testified that he had known Mrs. Montgomery prior to January 20, 1971, as Jamie Henderson, that he had not seen her for about six months prior to that time but that on January 20 he saw her at a grocery store and she invited him to come by the following evening to have a drink with her and her husband. He stated that during this conversation she asked him if he smoked grass to which he replied that he had before but had quit due to trouble with the police. He then testified that he arrived at her house at 7:00 on January 21 but that he did not have any marijuana. He stated that he had brought a bottle of vodka and that he and Mrs. Montgomery had a drink, that she kept badgering him to obtain some marijuana and that he finally remembered someone in Norman who might have some and that he would drive up there to pick it up. He went to Norman and returned at approximately 9:00, entered the dwelling, and rolled a couple of marijuana cigarettes which they smoked. Defendant testified that he began to get nervous because he felt that this was an "entrapment thing", left the house and was arrested outside where the officers were waiting for him.

Royce Henderson, a private investigator, testified for the defense that he had attempted to locate Mrs. Montgomery but was unsuccessful.

As the first proposition, defendant urges that he should have been acquitted at trial because a clear case of entrapment was made out under the laws of the state of Oklahoma.

■ "Entrapment" is the planning of an offense by an officer, or is someone acting under his direction and his procurement by improper inducement of its commission *by one who would not have perpetrated it, except for the trickery of the officer*. Savage v. State, Okl.Cr., 304 P.2d 344 (1956); Crosbie v. State, Okl.Cr., 330 P.2d 602 (1958); Riddle v. State, Okl.Cr., 374 P.2d 634 (1962). One who is instigated,

induced, or lured by officer of law or other person, for purpose of prosecution, into commission of crime *which he had otherwise no intention of committing* may avail himself of defense of entrapment. McCart v. State, Okl.Cr., 435 P.2d 419 (1968). Principle of entrapment places no limitation on right of officers to obtain evidence of any crime *originating in mind of another*; and an officer may, when acting in good faith with view to detecting crime, make use of deception, trickery or artifice. Shook v. State, Okl.Cr., 453 P.2d 332 (1969).

■ From the foregoing, and as the Attorney General points out, the real issue in this case is whether the defendant had the criminal intent to obtain marijuana without inducements or undue pressure or exertion on the part of law enforcement officers or their agents. This Court held in Ryans v. State, Okl.Cr., 420 P.2d 556 (1966), that intent as an essential element of an offense is a question for the jury to be determined from what the accused does and says, and all the facts and circumstances of each case. Suffice it to say that here the jury chose not to believe the defendant's version of being badgered into obtaining the marijuana. Indeed, the defendant admits driving from Oklahoma City to Norman, buying the marijuana and returning to Oklahoma City *by himself*. Additionally upon leaving the informant's house, defendant left only a small amount of marijuana and took the remainder with him. This Court has repeatedly held that where the evidence is conflicting and different inferences can be drawn therefrom it is the province of the jury to weigh such evidence and determine the facts. Grant v. State, Okl.Cr., 385 P.2d 925 (1963); McCluskey v. State, OklCr., 372 P.2d 623 (1962); McCart v. State, Okl.Cr., 435 P.2d 419 (1968).

■ Defendant further claims that the trial court committed error of law in the giving of Instruction No. 5 on entrapment, claiming that said Instruction places the burden of proving a negative predisposi-

tion toward criminal conduct on the defendant; i. e., that the burden of proof was upon the State to show that the officers did not entrap the defendant. Such is clearly not the case. In Watson v. State, Okl.Cr., 382 P.2d 449 (1962), this Court held:

"The defense of entrapment, like self-defense, is an affirmative one * * * and before it can be considered by the jury, there must appear some evidence which, if believed, would reasonably tend to establish the fact that defendant was lured into the commission of the crime by officers."

Defendant cites United States v. Hill, 444 F.2d 115 (10 Cir. 1971), which held that framing an Instruction as to defense of entrapment in terms of "lawful" as opposed to "unlawful" constitutes clear prejudicial error requiring reversal. However, United States v. Hill, *supra*, involved the violation of the sale of heroin under federal law with the defendant having been convicted in federal court according to the Federal Rules of Criminal Procedure. In Sharp v. State, Okl.Cr., 407 P.2d 593 (1965), the Court ruled that questioned words in an Instruction should be interpreted in favor of consistency with remainder of Instruction rather than isolated to create conflict within Instruction.

It is the opinion of this Court that the Instructions given presented the issues involved and did not deprive the defendant of a fair and impartial trial. See Groom v. State, Okl.Cr., 419 P.2d 286 (1966); Austin v. State, Okl.Cr., 419 P.2d 569 (1966).

Defendant's second proposition holds that the trial court committed error in denying defendant's motion for mistrial. The record reflects the following testimony of Detective Burns.

"Q. (To the Witness) You may continue.

"A. (By the Witness) At that point— he was stating that 'this weed is really good; I'm really getting high. Is it doing you any good?'

He then attempted to commit oral sodomy on the female at that time."

At which point the defendant objected. A hearing was held at the bench outside the hearing of the jury. The court overruled the motion for mistrial, questioned the jury as to whether anyone felt like they had been prejudiced against the defendant by the remark, to which no one indicated that they had, and then admonished the jury to disregard the statement. Defendant claims that the testimony amounted to an evidentiary harpoon. In Wright v. State, Okl.Cr., 325 P.2d 1089 (1958), Judge Nix, writing for the Court, held that an "evidentiary harpoon" is that which has been willfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same. Ultimately the question to be answered in such a situation is whether the defendant's right to a fair and impartial trial was materially prejudiced thereby or whether the "harpoon" complained of amounted to harmless error.

Suffice it to say that here the trial court acted quickly to cure the error and to eliminate the statement and its effect from the record and from the minds of the jurors. In Duncan v. State, 89 Okl.Cr. 325, 207 P.2d 324 (1949), the Court followed the rule that where a peace officer voluntarily states a matter which should not be introduced in evidence and the trial court promptly excludes the matter, such voluntary testimony of the witness, although improper, will not ordinarily be ground for the reversal of a conviction. We believe the error complained of was harmless error which was cured by the trial court's action.

Defendant's third proposition of error asserts that improper conduct of the Assistant District Attorney on three separate occasions, only one of which merits attention, amounted to prejudicial error.

In the State's cross-examination of the defendant the following testimony was given.

"Q. Then in 1959, five years after 1954, Mr. Robinson, your parole was revoked for 'the commission of another crime, wasn't it?

"A. No sir, it was not.

"Q. It was not? And you did not return to the Huntsville Penitentiary?

"A. My parole was revoked, but not for a conviction of a felony.

"Q. What was your parole revoked for? *Was it the crime of Indecent Exposure?*

"A. No sir, it was not." (Emphasis added. Tr. 94)

Whereupon the defendant objected and a hearing was held at the bench at which time he moved for a mistrial; said motion being overruled. The defendant then requested that the jury be instructed to disregard the indecent exposure comment and this motion was likewise overruled.

■■■ The rule is well-established in Oklahoma that when the defendant takes the witness stand to testify in his own behalf, he does so subject to inquiry concerning his former convictions and he may be cross-examined with reference to prior convictions. McDonald v. State, Okl.Cr., 489 P.2d 776 (1971); Gable v. State, Okl. Cr., 424 P.2d 433 (1967). Additionally, a witness may, on cross-examination, be asked whether or not he has ever been convicted of a felony or any misdemeanor which involves moral turpitude. Winfield v. State, 18 Okl.Cr. 257, 191 P. 609 (1920). The purpose of cross-examining a defendant regarding former convictions is to affect his credibility as a witness. As long as the questioning does not place undue emphasis on the prior convictions and consequently adversely affect the jury, then such questioning will not be grounds for a reversal. Accordingly, we find this proposition meritless.

Defendant's fourth and final proposition asserts error on the part of the trial court during the second portion of the proceedings against the defendant. The second portion of the trial involved the separate hearing to determine whether the defendant had previously been convicted of a felony crime.

■■■ Defendant first claims under this proposition of error that the trial court erred in refusing defendant's offer of proof that he was denied effective assistance of counsel in his earlier conviction.

This Court, in Mure v. State, Okl.Cr., 478 P.2d 926 (1970), quoted the rule established by the United States Supreme Court in Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70, which held:

" 'Presuming waiver of counsel from a silent record is impermissible; *the record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer.*' " (Emphasis added)

The record of judgment and sentence of defendant's prior felony conviction which was used in the second stage proceedings does show that defendant was fully informed of the charge against him, the consequences of his plea and all of his rights, including his right to counsel and jury trial and further that defendant knowingly and fully waived his said right.

Defendant's offer of proof that he was denied effective assistance of counsel and was not fully advised of his rights was to consist solely of his own testimony. The following testimony was held in the judge's chambers prior to beginning of the second stage of the proceedings.

"BY THE COURT: * * * Alright, anything else, Mr. Jones?

"BY MR. JONES: Yes, I want to put Mr. Robinson under oath to testify as to what happened that day. That he did not have an attorney at that time and the Court did not fully advise him of his rights to have an attorney, either at Preliminary Hearing, which was late, or at the Judgment and Sentence. Now I have an affidavit from the Defendant— an affidavit was attached to the motion

to strike. But, I think it is probably—it would probably be better for him to testify.

\*    \*    \*    \*    \*    \*

"BY THE COURT: \* \* \* I am not interested in hearing any testimony by this man in view of the fact that he waived his constitutional rights, having been advised of them. \* \* \* I think it would be exaulting form over substance to twenty years later \* \* \* go back into the technicalities of whether he had a lawyer twenty years earlier or not \* \* \*.

"BY MR. JONES: Well, in that case, let the record show that we except to the Court's refusal and judgment and order on this matter and that we are ready to present the testimony and we feel it's proper." (Tr. 134–135)

While this Court is of the opinion that defendant was within his rights to testify that he had not knowingly and intelligently waived his rights in the former conviction and that the trial judge abused his discretion in not allowing the defendant to so testify and so put the question before the jury for their consideration, we feel that the defendant waived his right by not again at the close of the state's evidence in chief, offering to put in evidence said allegations.

The casemade reflects that the following occurred:

"BY MR. GROVE: The State rests.

"BY THE COURT: Alright, call your first witness on behalf of the defendant.

"BY MR. JONES: The defense has no witnesses Your Honor.

"BY THE COURT: Does the defendant rest?

"BY MR. JONES: The defense rests, Your Honor." (Tr. 160)

By not having properly preserved this error, we feel that it was waived by the defendant and is not before this Court for determination. We are also of the opinion that the trial judge's abuse of discretion, in view of the foregoing reason and defendant's waiver thereof, does not constitute reversible error.

■  The defendant further claims under this last proposition that the trial court erred in allowing the state to present a witness who had not been endorsed on the Information and further by denying the defendant a short continuance for impeachment purposes.

The casemade reflects the following testimony:

"BY MR. JONES: Comes now the defense and objects to the calling of a witness that is not endorsed on the Information.

"BY THE COURT: Alright, let the record show the objection will be overruled.

"BY MR. JONES: Note our exceptions." (Tr. 150–151)

We find this contention to be without merit. If a defendant is surprised when trial court permits name of witness to be endorsed upon Information after trial has commenced and such endorsement requires production of further testimony defendant should withdraw announcement of ready for trial and file motion for postponement or continuance setting out therein facts constituting such surprise and other evidence, if any, he could produce to rebut testimony of additional witness if trial were continued. But if he fails to do so, error, if any, is waived. Jones v. State, Okl.Cr., 410 P.2d 559 (1966). Since the defendant did not withdraw his announcement of being ready for trial nor file a motion for continuance, he has waived the error complained of.

In conclusion, we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.