Charles Elsworth ZACKERY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–220.

Court of Criminal Appeals of Oklahoma.

Dec. 7, 1977.

John T. Elliott, Public Defender, Garvin A. Isaacs, First Asst. Public Defender, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge.

The appellant, Charles Elsworth Zackery, hereinafter referred to as defendant, was convicted, upon trial by jury, in the District Court, Oklahoma County, Case No. CRF–76–1697, for the offense of Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 645. The jury fixed his punishment at a term of two (2) years in the custody of the Department of Corrections and on October 1, 1976, the defendant was sentenced in accordance with the jury's verdict. From said judgment and sentence the defendant has filed this timely appeal.

At the trial, the State called the complaining witness, Mr. George Ayers Clarke, who testified that while in his home, located at 114 N.E. 9th Street, Oklahoma City, on the 12th day of April, 1976, he was visited by the defendant herein and two female companions. He stated that one of the ladies demanded money which she claimed was due her from him and after he gave them $40.00, a fight ensued with the defendant, who cut him with a knife. He further testified that the group took a television from his house, threw his car keys away and slit the tires of his car. He stated that he then walked to the Veterans Hospital where he was treated for his cuts.

On cross-examination, defense counsel pointed out some inconsistencies in the testimony of Clarke. The complaining witness stated that he had testified under oath

falsely at the preliminary hearing when he stated that he was employed as an Air Traffic Controller. He stated his reason was in order to protect his "real" job. The complaining witness also admitted, on cross-examination, that he had recently appeared before a Sanity Commission.

The State's next witness was Officer Adam Edwards, who testified that he met the complaining witness in the Veterans Hospital on April 12, 1976, observed lacerations on his neck and face and took a report from him. The complaining witness had stated that two women and one man had come to his home, demanded money, and struck him with a knife.

The third witness for the State was Officer Dennis Lee Asper, who arrested the defendant on April 26, 1976, pursuant to an outstanding radiogram of warrants for the defendant on suspicion of Assault and Battery and Robbery with a Dangerous Weapon. He further stated that when he originally arrested the defendant, the defendant stated his name was Gary Zackery. The officer then took defendant to his mother's home where she identified him as Charles Zackery.

The final witness for the State was Dr. James Totoro. He stated that he had occasion to treat the complaining witness in this case at approximately 2:00 a. m. on April 13, 1976. On cross-examination, the doctor stated that any sharp object could have caused the wound.

After this testimony the State rested its case, the defense interposed a Demurrer, which was overruled. The court then denied the defense counsel's offer to stipulate to the testimony of Don White, Air Traffic Controller for Oklahoma City, who would have stated that the complaining witness had never been employed in that position.

The defendant then took the stand in his own behalf and testified on direct that he had been convicted of the felony of Grand Larceny in 1973 and Sale of Heroin in 1975. He stated that on April 12, 1976, around 8:00 p. m., he accompanied two ladies to the home of George Clarke. He stated that he went for the purpose of helping to collect money that Clarke owed one of the ladies. Defendant stated that an argument ensued over the money, at which time Clarke struck one of the ladies and knocked her down. He then came to her defense and struck Clarke. He further testified that he had a nail file in his hand, which appeared to be bent when they left.

The defense next called Deborah Watley, who testified to essentially the same facts as the defendant. She added that she had taken Zackery to Clarke's house for protection because her observations of Clarke were that he drank a lot and was easily provoked. She did state that she observed blood on Clarke's face upon departing.

At this time an in camera hearing was held concerning the materiality of the testimony of the next witness to be called by the defendant. In substance, the defendant wanted to offer the testimony of a police officer who had investigated a series of events at the home of Mr. Clarke which led to the filing of a petition for an involuntary commitment. On cross-examination by the State it was brought out that the action had been taken three months subsequent to the alleged crime; that the witness had been committed for six days; and that he had been fully restored two months prior to the testimony and trial in progress. The trial judge, therefore, ruled that such testimony was irrelevant and should be excluded. [Tr. 154–159]

The next witness called on behalf of the defendant was Juanita Nelson, who testified that she was a Deputy Court Clerk for Oklahoma County and was familiar with the mental health records of that county. She further testified that she had in her custody the record concerning the State's complaining witness. At this time the Order of Commitment was offered and received into evidence. The defendant offered to introduce into evidence both oral and written statements concerning the allegations and proof adduced at the hearing before the sanity commission. The State objected to such evidence, which was sustained.

On cross-examination it was brought out that the complaining witness had been released from Central State Hospital with a Certificate of Restoration of Competency.

The final witness for the defense was Eleanor Zackery, the mother of defendant. She testified essentially that the complaining witness came by her home and offered to refuse to testify if she would pay him $50.00.

The defendant then attempted to call two Oklahoma City Police Officers who would have testified concerning the acts committed by Mr. Clarke which later led to his commitment to Central State Hospital; however, the trial court sustained an objection to this testimony. After making his offer of proof concerning the testimony of the two police officers mentioned above, the defendant then rested.

After asking the State if they had rebuttal and receiving a reply in the affirmative, the Court then declared a noon recess. However, upon returning for the afternoon session, the defendant asked to be allowed to reopen his case in chief and at that time called Officer Kenneth Roy Beatty. Once again defendant attempted to put on evidence concerning the activities of the complaining witness which led to the mental health commitment; however, the trial court sustained an objection to this testimony.

The defendant then called Savoya Collins; however, before taking any of her testimony, the trial court excused the jury and conducted a hearing to investigate the relevancy and materiality of the witness' proposed testimony. Under direct examination, and out of the hearing of the jury, it became apparent that the witness would testify that the complaining witness was drunk and intoxicated, in her opinion, shortly after the events in question. It further became apparent that this witness had been present in the courtroom during all the proceedings in spite of the rule of sequestration. The trial court then sustained the State's objection to this testimony.

The defendant then asked permission to call Mr. Clarke as his witness in the case.

After inquiry by the court it was determined that the purpose for calling Clarke on behalf of the defendant was to show prior inconsistencies in both his testimony and the written report given the police department. The trial court then ruled that the defendant had had ample opportunity to cross-examine the witness during the State's case in chief, and denied the request. After moving for a mistrial, which was overruled, the defendant, once again, rested.

In rebuttal, the State then called Officer Ron Chambers who testified that he interviewed defendant on April 27, 1976, in the city jail at approximately 11:00 a. m. After it had been established that the defendant had been advised and understood his constitutional rights, the witness then testified concerning a conversation with the defendant. Essentially, the witness testified that the defendant denied going to the complaining witness' home, or being involved in an altercation with him.

In surrebuttal, the defense then recalled the defendant, who stated that he did not deny being at the home of the complaining witness. He further stated that he did not deny to the witness Chambers that there had been an altercation between him and Clarke.

After resting in surrebuttal, the parties then recessed to the court's chambers where a discussion followed concerning the "after former conviction of a felony" portion of the trial. It was then decided that since the defendant had admitted on direct examination his conviction for two prior felonies, that a bifurcated trial was no longer necessary. After overruling the defendant's objection to the introduction of further evidence, the parties were then allowed to stipulate to a judgment and sentence supporting the prior conviction of the defendant.

■■■ For his first assignment of error, the defendant alleges that the trial court committed reversible error when it overruled his objections to the cross-examination by the prosecuting attorney of the de-

fendant concerning the defendant's prior criminal record. This Court has long held that if the defendant elects to take the stand and testify in his own behalf, that he does so subject to the right of cross-examination by the prosecution. In addition, this cross-examination may concern questions, limited in scope, about the defendant's prior criminal record. The purpose, of course, is to allow the jury the opportunity to weigh the credibility of the direct testimony of the defendant. See *Washington v. State,* 80 Okl.Cr. 300, 159 P.2d 278 (1945); *Little v. State,* 79 Okl.Cr. 285, 154 P.2d 772 (1945); and *Robinson v. State,* Okl.Cr., 507 P.2d 1296 (1973).

■ In the instant case the record clearly shows that the defendant took the stand in his own behalf and admitted that he had been convicted of two previous felonies on direct examination. [Tr. 98] Furthermore, the record does not indicate that the prosecuting attorney went further than is permissible in his cross-examination concerning the prior felonies. See *Little v. State,* supra.

Finally, it should be noted that the trial court properly instructed the jury as to the purpose of the cross-examination in Instruction No. 8 [1].

We, accordingly, find this assignment of error to be without merit.

■ For his second assignment of error, the defendant urges that the trial court committed reversible error when it allowed the prosecutor to ask leading questions. A careful examination of the record reveals that while the prosecuting attorney did, in fact, ask some questions of various witnesses which were leading and suggestive, that none were of such a nature that would prejudice the rights of the defendant to a fair and impartial trial. Furthermore, in each case the defendant objected and the trial court sustained the objections and the prosecuting attorney either rephrased his question or changed to a different subject matter. Finally, it should be noted that on several occasions the questions and answers objected to by the defendant resulted in an admonition by the trial court to the jury to disregard the same. [Tr. 58] We, therefore, find this assignment of error to be without merit.

■ For his third assignment of error, the defendant alleges that he was denied a fair and impartial trial due to evidentiary harpoons which were interjected by the State's witnesses. The defendant had filed a pre-trial Motion in Limine asking the trial court to prohibit the State from using evidence or testimony concerning drug addiction or prostitution. At pages 62 and 63 of the transcript appears the testimony of Officer Edwards concerning his interview with the complaining witness at the hospital. Officer Edwards testified that the complaining witness had informed him, at the hospital, that three persons had come to his home and that one of the women had offered him sexual favors. An examination of the record reveals that this testimony did not, in fact, violate the order sustaining the defendant's Motion in Limine. The phraseology "prostitute" or "drug addict" was never used. The testimony of Officer Edwards of the interview with the complaining witness at the hospital was proper and admissible as part of the res gestae.

■ The other remark objected to by the defendant concerns the testimony of Officer Dennis Asper, the arresting officer.

---

1. "The defendant admits that he has heretofore been convicted of other offenses than that charged in the Information. This evidence was not admitted as tending to prove the guilt or innocence of the defendant of the offense of ASSAULT AND BATTERY WITH A DANGEROUS WEAPON, but was admitted for two purposes:

1. As tending to sustain the charge of a prior conviction as alleged in the Information; and,

2. So that the jury may, in your discretion consider the same as such facts may or may not, in your judgment affect the weight and credit which you will give to the testimony of the defendant.

"Such prior convictions were not admitted for any other purpose. A person may not be convicted of one offense by any proof tending to show that he may or may not have committed another offense."

Officer Asper stated that he arrested the defendant in connection with a radiogram outstanding warrant for the defendant for Assault with a Deadly Weapon and Robbery with a Dangerous Weapon. [Tr. 68] As the defendant was never charged with the offense of Robbery with a Dangerous Weapon, this was, in fact, an evidentiary harpoon; however, the trial court made every effort to admonish the jury when the court informed the jury, immediately after the question and answer, as follows:

"THE COURT: Ladies and gentlemen of the jury, I am advised by the attorneys that, and both sides agree in this case, that there never was a charge filed called robbery against this defendant growing out of any near incident, that he has not been on trial and there is no trial pending for that and you should disregard that statement of the witness entirely and not consider it for any purpose whatsoever. "It is ordered stricken from this record. * * *"

After reading the entire record, being cognizant of the fact that the defendant received only two years for this offense, and in view of the admonition by the trial court, we cannot find that this testimony prejudiced his fundamental rights. *Riddle v. State*, Okl.Cr., 374 P.2d 634 (1962); and *Robinson v. State*, Okl.Cr., 507 P.2d 1296 (1973). See also *Holt v. State*, Okl.Cr., 489 P.2d 504 (1971) and *Kite v. State*, Okl.Cr., 490 P.2d 1402 (1971). This assignment of error is also without merit.

■ For his next assignment of error the defendant urges that the trial court erred when it refused to allow certain witnesses to be called on behalf of the defendant. The record indicates that subsequent to the charges against the defendant being filed, but prior to the hearing in the instant case, the State's complaining witness was involuntarily committed by the Oklahoma County District Court to Central State Hospital for a period of six days, after which he was released with a Letter of Certification of Restoration of his mental competency. These facts were brought out early in the case and subsequently the defendant called

a deputy court clerk of Oklahoma County and succeeded in having the Order of Commitment introduced into evidence. The defense attorney then attempted to call two local police officers who had investigated the complaint leading to the mental health petition, in order that they might testify concerning the acts of the State's witness. The trial court held a hearing, out of the presence of the jury, and determined that this evidence was incompetent, irrelevant and immaterial. The court further ruled that it could only be cumulative of the evidence already admitted, to-wit: the Order of Commitment. We do not find that the trial court abused its discretion in this regard. The exclusion of testimony which is merely cumulative is harmless error. See *Miller v. Judd*, Okl., 429 P.2d 714 (1967) and 20 O.S.1971, § 3001. Since the in camera hearing clearly indicates that this evidence would have been cumulative; that, in fact, the jury had ample opportunity to observe the complaining witness while on the stand, and the defendant had ample opportunity to cross-examine the prosecuting witness and was allowed to introduce evidence concerning his commitment to Central State Hospital, we cannot say that the trial court abused its discretion. In *Tate v. Stone*, 35 Okl. 369, 130 P. 296, 298 (1942), the Oklahoma Supreme Court stated:

". . . Evidence excluded will not operate as reversible error, unless it affirmatively appears to have been material under the issues framed."

See also *Mid-West Ins. Co. v. Shrader*, 99 Okl. 17, 225 P. 541 (1924).

■ The defendant next complains about the denial of his right to call Savoya Collins in his defense. The record clearly indicates that the rule of sequestration had been invoked prior to the calling of the first witness. The record also indicates that Savoya Collins had been present in the courtroom throughout the trial. The rule of sequestration is a discretionary rule which is to be decided by the trial court. The defendant cites no authority or reason why this Court should hold that the trial court abused that discretion. *McKinnon v. State*, Okl.Cr., 299 P.2d 535 (1956).

Finally, under this same assignment of error, the defendant objects to his inability to recall the complaining witness as a defense witness, for the purpose of further impeaching his testimony. When counsel requested permission to recall the complaining witness, the trial court inquired into the purpose for recalling him. Counsel for defendant stated that it was for the purpose of attempting to impeach his identification of the defendant, and to discredit his earlier testimony as to the events concerning the attack. Counsel acknowledged that while he could have cross-examined the witness on this matter when he testified, counsel's trial tactics were planned in advance and he anticipated that perhaps the witness' testimony would be conflicting with previous statements made under oath. The court ruled that counsel had had an opportunity to extensively cross-examine the complaining witness and denied permission to recall him.

■ No offer of proof was made by counsel for the defendant as to the substance of the witness' testimony, if recalled, nor does he cite any authority in support of this assignment of error. Our long-standing rule is that counsel for an appellant must not only assert error, but must support his contentions both by argument and citation of authority. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authority to support the mere assertion that the trial court has erred. See *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969) and *Anderson v. State,* 8 Okl.Cr. 90, 126 P. 840 (1912).

■ There is nothing in the record before us to indicate that had the defendant been permitted to recall this witness his testimony would have differed substantially from that given earlier. In fact, it clearly appears that such testimony would only have been a rehash of that given on cross-examination. For this reason, and in accordance with *Sandefur v. State,* supra, we find this assignment of error to be without merit.

■ For his fifth assignment of error, the defendant alleges that the trial court committed reversible error when it allowed the State's witness to comment concerning the defendant's right to remain silent. The defendant objected to the following testimony found in the transcript at pages 72–74:

"Q. [By the State] Did you, at any time, advise him of his rights?

"A. Yes, I did.

"Q. In what form?

"A. While we were in route [sic] after the arrest, before we got to jail.

\*　　\*　　\*　　\*　　\*　　\*

"Q. [By the State] When you arrested him and he told you his name was—

"MR. ISAACS: Beyond the scope of cross-examination is the basis for my objection.

"THE COURT: Overruled. You may go ahead.

"Q. Did you question him about Zackery, I mean Charles Zackery?

"MR. ISAACS: Same objection, Your Honor.

"THE COURT: Overruled as to that question but I will hear objections as we go. He can answer, now yes or no.

"Q. Did you question him about the whereabouts of Charles Zackery?

"A. Yes.

"MR. ISAACS: Objection again.

"THE COURT: Overruled.

"MR. ISAACS: Could we have a continuing one on anything?

"THE COURT: No, I want to hear objections now as we go.

"Q. Did he know anything about Charles Zackery?

"MR. ISAACS: Objection.

"THE COURT: Sustained."

While the defendant argues that this was an indirect comment on the defendant's right to remain silent, we do not agree. A careful reading of this testimony, plus the subsequent and prior testimony, leads us to believe that it neither implied, directly nor indirectly, that the defendant exercised his

right to remain silent. At the most, it was an attempt on the part of the prosecutor to show that the defendant at one time gave a false name to the arresting officer. This assignment of error is also without merit.

■ For his next assignment of error, the defendant alleges that the trial court erred when it allowed the State to reopen its case for the purpose of admitting the judgment and sentence of the defendant's former conviction. The record indicates that the prosecution asked to be allowed to reopen for the reason that the case was filed as an "After Former Conviction of a Felony" and the prosecutor was under the mistaken impression that a bifurcated proceeding was going to be held. [Tr. 214] Previous to this, it had been agreed by the parties and the court that only a single stage trial would be held since the defendant was going to testify and was, therefore, subject to revealing his prior felony convictions on cross-examination. This Court has previously held such a single stage proceeding permissible. See *Avants v. State,* Okl. Cr., 544 P.2d 539 (1975). The actual reopening of the case consisted merely of admitting a copy of the judgment and sentence of the defendant's prior conviction as State's Exhibit No. 1. In Oklahoma, it has long been the general rule that the reopening of a criminal case after both sides have rested, for the purpose of introducing further evidence is a matter of discretion with the trial court. See *Hall v. State,* 68 Okl.Cr. 451, 99 P.2d 166 (1940) and *Keltner v. State,* 52 Okl.Cr. 150, 3 P.2d 451 (1931).

The misunderstanding in the case at bar arose when defense counsel previously agreed that he would later stipulate that the defendant was the same Charles Zackery who was convicted of the prior felony. The prosecutor took this to mean that the stipulation would occur at the second stage of the trial because he was not aware that a single stage proceeding was permissible.

We, therefore, are of the opinion that the prosecutor's oversight was due to an honest misunderstanding and was not a bad faith effort to prejudice the defendant. Furthermore, it is difficult to see how any prejudice

resulted since the sentence imposed is well below the maximum sentence permissible for a first offender. The trial judge acted well within the discretion allowed by law and we hold this assignment of error to be without merit.

The defendant alleges some three other assignments of error which this Court has carefully examined. We find these assignments of error to be totally without merit. The defendant received a sentence of two years for the offense of Assault with a Dangerous Weapon, After Former Conviction of a Felony. The evidence that an altercation occurred between the defendant and the complaining witness was clear and convincing. Under these facts, and considering the sentence received by the defendant, we find that while he did not receive a perfect trial, he received an essentially fair and impartial trial.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly *AFFIRMED.*

CORNISH and BRETT, JJ., concur.