JIMMIE BYERS v. STATE.

No. A-10257.    March 22. 1944.

(147 P. 2d 185.)

268

Wimbish & Wimbish, of Ada, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, P. J. This is an appeal from verdict of jury and sentence of the district court of Pottawatomie county wherein the defendant, Jimmie Byers, was convicted and sentenced to serve one year in the State Penitentiary for the crime of obtaining property under false pretenses.

The defendant, on or about April 28, 1940, went to the Rooker Brothers Service Station in McLoud, Okla., and purchased two automobile tires and tubes on the strength of a credit card of the Magnolia Petroleum Company, purportedly issued to the Bender Tool Company of Denver City, Tex. The defendant represented himself as being one J. P. Myers, agent of the Bender Tool Company, and signed a credit ticket for the purchase of the automobile tires and tubes which amounted to the sum of $24.80.

A representative of the Magnolia Petroleum Company testified to the plan of the company concerning the issuance of credit cards to various customers who were on their approved credit lists. These cards would enable the customer to make purchases at various Magnolia service stations over the country and sign a credit memorandum or invoice in triplicate for their purchase. One of said invoices would in turn be sent to the home office of the oil company. The oil company then would bill the customer the first of each month for the purchases that had been made. Each of the credit cards bore an identifying number.

The proof of the state showed that the Bender Tool Company, which was the company in whose name the card used by the defendant was purportedly issued, was a fictitious company and the name J. P. Myers used by the defendant was a fictitious name. The defendant was arrested in Memphis, Tenn., when he had gone to a lithographing shop and sought to have credit cards similar to

the one he had been using made for the purpose of continuing to perpetrate the fraud upon the Magnolia Petroleum Company. After the arrest of the defendant he made several statements to officials of the Magnolia Petroleum Company in which he said that he had obtained the card from a friend while he was in a cafe in Seagraves, Tex. That the friend had several credit cards and spread them out on a table and he selected the Magnolia card. That he used the Magnolia card in making various purchases over several states during the period from about April 20th to May 6th.

The credit manager for the Magnolia Petroleum Company identified 81 sales tickets which evidenced purchases made under the purported authority of the credit card in the possession of the defendant. In each of the purchases the sales ticket was made to the Bender Tool Company of Denver City, Tex., and was signed by J. P. Myers, which was the same name used by the defendant in making the purchase at McLoud. Most of these purchases were for new tires and tubes. Under the admission of the defendant to the officers, in order to secure money, he would later resell these tires and tubes at a discount. The total purchases during the period when the defendant was using the fictitious credit card was about the sum of $900.

It is first contended that the court erred in admitting in evidence one of the credit cards issued by the Magnolia Petroleum Company which was admitted solely for the purpose of showing the general type of card used by the defendant. This exhibit did not purport to be the one used by the defendant in making the various purchases charged against him. At the time this exhibit was introduced in evidence the record discloses the following:

"Q. Mr. Rooker, are you familiar with the design and make of the Magnolia Petroleum Company's credit cards

as of April, 1940? A. Yes, sir. Q. I'll hand you here State's Exhibit No. 2, and ask you to tell the court and jury what that is? A. Well, it's a Magnolia Petroleum Company credit card, and it's been canceled on May 1, 1940. Q. Is that the general type of credit card which they used then? A. Yes, they are all just alike except for the number of the card and who it's made out to. Q. Does your company have in its possession the credit card used in this instance? A. We don't have it ourselves, the Magnolia might have it. Q. You say you don't have it? A. No, sir. Q. And you don't know where it is? A. No, sir. Q. Now, the card that was presented to you that morning, was it of that particular type? A. Yes, it was just exactly like it. Mr. Hendon: If the court please, we'd like to offer State's Exhibit 2 in evidence to show the general type of the card, without reference to the subject matter on it—just the printing from the engraver. Mr. Bob Wimbish: To which we object as incompetent, irrelevant and immaterial. The Court: Objection overruled. Be admitted to show the general type of the card. Mr. Wimbish: Exception."

Counsel have not pointed out in their brief where the admission of this evidence prejudiced the defendant. As a part of the state's case the prosecution sought to show the system and method of sale of goods by the use of credit cards. In this connection the display of the type of credit card used by defendant in making the purchases was an aid to the jury so that they might better understand the testimony and explanation of the procedure followed by defendant in procuring the goods charged to him.

It is next contended that the court erred in admitting in evidence, over the objection of the defendant, certain other tickets, or credit card invoices, showing alleged fraudulent purchases other than the one for which the defendant was on trial. In this connection it is argued that there was not sufficient evidence to connect the defendant with the purchases represented by said tickets to make them admissible against him. These tickets showed

purchases by an individual who signed them as J. P. Myers, as an agent for the Bender Tool Company of Denver City, Tex. The card number and the names were identical with that used by the defendant in making his purchase in the instant case. After the arrest of the defendant he told officials of the Magnolia Petroleum Company that he first used the credit card in Texas, and that then he started out and went through Texas, Arizona, New Mexico, back to Oklahoma, down through Arkansas and Louisiana, until he was finally arrested in Memphis, Tenn. He told of making purchases by the use of this card at Texola, McLoud, Shawnee, Atoka and El Reno, Okla. From the admissions made by the defendant he had possession of this credit card from about April 20th to May 6th. The tickets admitted in evidence were issued during this period and the places of purchase and dates of each ticket showed the route covered by defendant as admitted by defendant to the officers.

One of the witnesses for the state qualified as a handwriting expert and he stated that it was his opinion that the name J. P. Myers which was written on each of the credit cards introduced in evidence was in the handwriting of the same individual.

The general rule is that in a prosecution for one crime it is not proper to admit testimony against the defendant tending to connect him with the commission of other offenses for the purpose of establishing the guilt of the offense charged. However, there is an exception to the general rule that such evidence is competent when it tends to establish a systematic scheme or plan so related to each other that the proof of one tends to establish the other. Such instances often arise in cases of embezzlement, forgery and obtaining money under false pretenses.

Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779; Chappell v. State, 74 Okla. Cr. 213, 124 P. 2d 742.

There have been many instances of abuse of this exception to the general rule above noted. The abuse of this rule has caused the reversal of more cases on appeal to this court in recent years than that of any other one matter.

We have said that in order for other offenses to be admissible against the accused to show a common scheme or plan or intent that they must not be remote as to time and there must be a visible connection between the crimes. Nemecek v. State, 72 Okla. Cr. 195, 114 P. 2d 492, 135 A. L. R. 1149; Pressley et al. v. State, 71 Okla. Cr. 436, 112 P. 2d 809; Landon v. State, 77 Okla. Cr. 190, 140 P. 2d 242; Herren v. State, 75 Okla. Cr. 251, 130 P. 2d 325.

The fact that one person may commit similar crimes does not justify the admission of the other identical offenses if they are independent of each other. Where the trial court cannot clearly see a visible connection between the alleged other offenses to the one charged, he should refuse to admit the other offenses in evidence. If the trial court is uncertain as to the admissibility of such evidence, he should give the benefit of such doubt to the defendant, as it is manifestly unfair to the accused to force him to prepare to defend himself against any collateral crime other than the one charged against him in the information. Juries are too prone, when such other offenses are admitted in evidence, to find an accused guilty of the crime charged merely because he might have committed some other offense.

In the instant case the defendant took one credit card, and, by the use of this credit card, made a series of purchases, numbering approximately 80, over a period of approximately two weeks. The visible connection between

these offenses is apparent and clearly these related offenses come within the exception to the general rule and their admission in evidence was not an error.

Next it is insisted that the court erred in admitting, over the objection of the defendant, a typewritten list of the alleged purchases represented by the tickets hereinabove discussed, which said list carried the caption "Purchases Made by Jimmie Byers."

An agent of the oil company had carefully checked the credit tickets which had been sent in to the head office of the company representing purchases made under the credit card used by the defendant during the period herein involved, and had taken the tickets and arranged them in chronological order and at the top had typed in the insertion "Purchases Made by Jimmie Byers."

The statement that the list contained purchases made by the defendant, of course, was a conclusion of the person who prepared the list and should not have been admitted in evidence. The typed statement simply recited in chronological order the purchases which had already been evidenced by the various tickets which had been identified and admitted in evidence as State's Exhibit 4. There was no necessity for a petition of this evidence, and since the typed statement was no part of the original record the objection of the defendant to its admissibility should have been sustained.

However, since this evidence was merely cumulative and concerned a matter which had been clearly established, we cannot see how the defendant has been prejudiced by its admission. The defendant did not testify and offered no defense other than the testimony of the county attorney and sheriff of Canadian county concerning the defendant's plea of guilty in Canadian county to the charge

filed there in connection with a purchase made on the identical credit card involved in the instant case. That proof was offered by the defendant solely in mitigation of the punishment in case the jury determined that he was guilty of the offense herein charged. Since this evidence was cumulative and the guilt of the defendant is evident, we hold that its admission, although error, was harmless.

Lastly, it is contended that the court erred in giving instruction No. 6, which is as follows:

"You are instructed that the court has permitted the defendant to introduce evidence in this case tending to show that the said defendant entered a plea of guilty in Canadian county, Oklahoma, to a charge of obtaining money under false pretense by the use of a Magnolia credit card, which card is alleged to have been used in this case, and was sentenced to serve a term of two years in the State Penitentiary at McAlester, and that said defendant served two years in said penitentiary, and that said defendant entered into an agreement with the Magnolia officials that they would not prosecute the defendant any further. In this connection you are instructed that any agreement had between the Magnolia officials and the defendant is not a bar to a prosecution for a crime alleged to have been committed in Pottawatomie county, State of Oklahoma, and the court has permitted said evidence to be introduced for the sole and only purpose that the jury may or may not consider the same in mitigation of punishment in the event they find the defendant guilty as charged in the information."

The defendant contends that the court erred in that part of the instruction which recites "the jury may or may not consider the same." An instruction in almost this identical language was requested by defendant. Evidently counsel for defendant considered the instruction as given to be fair as no objection or exception was taken to the giving of this instruction. It is not our purpose to place

the stamp of approval upon this instruction as a model to be followed in the future where similar circumstances arise in the trial of other cases. However, we do not see any fundamental error committed in the giving of this instruction to where this court would be compelled to say that it was so erroneous that the judgment of conviction should be reversed by reason of the giving of this instruction, although the guilt of the defendant is conclusively proved. Where no exception is taken to an instruction it will not be considered on appeal unless it is so fundamentally wrong that this court can say that by the giving of such instruction the defendant was deprived of a substantial right essential to his defense. We do not think the instruction was as confusing and misleading to the jury as counsel contend.

The jury evidently took into consideration the fact of the previous conviction and sentence of two years, as they only assessed a punishment of one year's imprisonment in the State Penitentiary.

Counsel for defendant present an earnest plea for their client pointing out his youthfulness, the fact that he gave a bill of sale to his automobile to the oil company as a partial payment for the fraudulent purchases he had made, and the further fact that after his sentence in Canadian county he went immediately to the State Penitentiary and served all of that sentence and that he should not be further punished. These are factors which might appeal to the Chief Executive in the exercise of executive clemency. This court is not authorized, even though the circumstances might be impelling to them, to modify a sentence or reverse a judgment of conviction unless we are able to say, after an examination of the complete record, that substantial error has been committed. An examination of this record does not disclose any material error which

requires a reversal of the judgment of conviction.

The judgment of the district court of Pottawatomie county is accordingly affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.