## GROUP v. STATE.

No. A-11396. Oct. 24, 1951.

(236 P. 2d 997.)

Lee Gill, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Harry V. Group, Jr., was charged by an information filed in the court of common pleas of Oklahoma county with fraudulently securing credit; was tried to a jury who returned a verdict finding the defendant guilty but left the punishment to be fixed by the court; thereafter the defendant was sentenced by the court to pay a fine of $100 and costs; and has appealed.

Two assignments of error are presented. First, the information was fatally defective and the court erred in overruling the demurrer to such information. Second, the evidence was insufficient to sustain the conviction.

The information, omitting formal parts, reads:

"On the 11th day of February, A. D., 1949, in Oklahoma County, State of Oklahoma, Harry V. Group, Jr., whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and wrongfully commit the crime of securing credit fraudulently in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully and unlawfully, with the intent that the same should be relied upon, make certain statements and representations, in writing, as to the financial condition and ability to pay of the Public Furniture Mart, Oklahoma City, Oklahoma, a corporation duly organized and operating under the laws of Oklahoma, and executing a check drawn by said defendant for the said corporation on the Citizens State Bank, Oklahoma City, Oklahoma, payable to Richards & Conover Hardware Company, wherein the defendant stated and represented that the

said corporation had on deposit therein the sum of $325.60, by reason of which representation defendant secured the delivery, on credit, from Richards & Conover Hardware Company of certain personal property, to-wit: an Odin Gas Range, No. S 11301, of the approximate value of $150.00; that such written representation of financial condition was false and untrue, all of which he, the said defendant, then and there well knew; contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma."

The defendant contends that this information is defective for the reason it failed to charge the purpose for which the check was given; secondly, for the reason that the information failed to charge that defendant "knowingly" made a false statement in the check; third, that the information failed to charge that the check was false; fourth, the information erroneously charges "representations" were made by the defendant; and fifth, it fails to set out in the information the check that was allegedly given by the accused.

The statute under which the defendant was charged provides:

"Any person who shall:

"1st. Knowingly make or cause to be made, either directly or indirectly, or through any agency whatsoever, any false statement in writing, with intent that it shall be relied upon, respecting the financial condition, or means or ability to pay, of himself, or any other person, firm or corporation, in whom he is interested, or for whom he is acting, for the purpose of procuring in any form whatsoever, either the delivery of personal property, the payment of cash, the making of a loan or credit, the extension of a credit, the discount of an account receivable, or the making, acceptance, discount, sale or indorsement of a bill of exchange or promissory note, for the benefit of either himself or of such person, firm or corporation; or,

"2nd. Who, knowing that a false statement in writing has been made, respecting the financial condition or means or ability to pay, of himself, or such person, firm or corporation in which he is interested, or for whom he is acting, procures, upon the faith thereof, for the benefit either of himself, or of such person, firm or corporation, either or any of the things of benefit mentioned in subdivision one of this section; or,

"3rd. * * *" (Unnecessary to copy as this section is not involved). 21 O. S. 1941 § 1501.

This statute has been a part of our code of law since 1915, but there has been a scarcity of cases decided by this court construing it.

It is now well settled that the common-law doctrine requiring strict rules of pleading, as applied to indictments and informations, has been abrogated by statutes in Oklahoma and this court is committed to the rule that informations should receive a liberal construction, and the information is sufficient if, from the language used in the information, it can be seen that the accused is charged with sufficient particularity as will enable him to prepare for trial, and so defines and identifies the offense that if the accused is convicted or acquitted he will be able to plead jeopardy if he is again charged with the said offense. However, the rule above established does not mean that an information will be sustained that leaves out one of the essential allegations fixed by the statute as constituting the crime for which the accused is to stand trial.

Measured by the above rules it would appear that the information sufficiently complies with the law so as to inform the accused of the offense of which he is charged so as to enable him to prepare for trial and to enable him to plead jeopardy if he is again charged with the same offense. The information charges the making of a false statement in writing by executing a check in a

404

certain amount upon an Oklahoma City bank in order to secure on credit a certain stove of the value of $150; and that such written representation of financial condition was false and untrue, which the defendant well knew at the time said statement in writing was made. Thus it will seem that all of the essential allegations under the first subdivision of the statute were included in the allegations of the information.

The purpose for which the written check was executed is set forth; the contention that the information failed to charge that defendant "knowingly" made the false statement may not be sustained for the reason that the information charged that defendant well knew that the representation was false and untrue and further charged at the beginning that the defendant did certain acts "willfully and unlawfully". Hutchman v. State, 61 Okla. Cr. 117, 66 P. 2d 99. We do not deem it necessary to set out the check in detail in the information as it is sufficiently referred to to advise the defendant of its nature.

Although a great portion of the brief of the defendant is devoted to his contention that the information is defective, it would seem that the conviction in this case would stand or fall upon the evidence rather than upon the alleged deficiencies in the information.

It is our belief after a consideration of this statute that the members of the legislature at the time of its adoption primarily had in mind the kind of written statement as to the financial condition of a person or corporation, which is ordinarily referred to as a "financial statement" wherein is set forth all of the assets and liabilities of the person or corporation making the statement.

The evidence briefly stated is as follows: About July 1, 1948, defendant and an associate started a furniture business in Oklahoma City which was called the Public Furniture Mart. When the business first commenced purchases were made from the Richards and Conover Hardware Company, sometimes referred to as Rich-Con Hardware, which was doing a wholesale hardware and furniture business in Oklahoma City. No credit business was done at the beginning but as each delivery was made cash was paid by the defendant's company. After purchases by cash had been made for three or four months the Public Furniture Mart received an invoice some time in November, 1948, in which it was stated that payment for articles purchased might be made in thirty days, and pursuant to this invoice a credit account was started. During the month of December, 1948, $325.60 worth of merchandise was purchased by the said Public Furniture Mart from the Richards and Conover Hardware Company. However, the Public Furniture Mart did not pay for these goods at the end of the thirty days allowed through their credit arrangement. On or about February 11, 1949, the defendant as manager of the Public Furniture Mart called the hardware company and ordered an Odin gas range which cost $156.60. When the order was given to the saleslady she referred the defendant to Mr. Branson, who was credit manager for the hardware company. Mr. Branson testified that he had a conversation with the defendant in which he advised the defendant that the gas range could not be delivered to him because his account was in a past due condition and that unless it was brought up to date no further credit extension could be granted; that defendant told him that he would then send him a check over by his driver when he came after the range if that would be satisfactory to the hardware company, and the credit manager advised the defendant that such arrangement would be satisfactory. In accordance with the conversation had with the defendant the truck driver for the defendant's company arrived a few minutes later with a check made payable to the hardware company in the sum of $325.60, drawn on the Citizens State Bank of Oklahoma City and signed Public Furniture Mart, Harry V. Group, Jr. When this check was delivered to the hardware company the gas range ordered by the defendant was

delivered to the truck driver. The check delivered by the driver was then deposited in the bank where the hardware company did its business and it was later returned to the hardware company with a notation that there were insufficient funds to the credit of the Public Furniture Mart to pay the amount of the check; that an extension of credit for the gas range would not have been granted if the check had not been given by the defendant. On cross-examination the witness testified that ten days after the check had been returned on account of insufficient funds to the credit of the maker the defendant came to their place of business and executed a note for the amount of the check plus the cost of the gas range, but the note was just like the account, it was uncollectible.

The evidence on behalf of the defendant showed that shortly after he commenced the business with his associate that they sold furniture through furniture sales contracts which were assigned to the Liberty Plan Company, a money lending concern in Oklahoma City; that eight or nine thousand dollars of these contracts were in the hands of the Liberty Plan Company at the time the check was given, when suddenly the loan company decided that they had become loaded and returned the contracts to the defendant; that this sudden action on the part of the loan company was a complete surprise to the defendant and put his finances in a cramp; that at the time he had the conversation with Mr. Branson, credit manager for Richards & Conover Hardware Company, he, the defendant, told him that he would send the check for the amount of the unpaid account with the understanding that the check would be held until the following Monday before it was deposited. The defendant introduced his bank statement in evidence which showed that his account fluctuated; that there were insufficient funds in the account to pay the amount of the check until February 15, 1949, on which day there was a balance in the sum of $521.39. At the end of the following day, February 16, 1949, there was an overdraft in the sum of $395.35. The defendant further testified that a few days after the transaction had with the Richards and Conover Hardware Company that eight or ten creditors of the Public Furniture Mart met and agreed to allow time for the defendant to obtain another connection with some finance institution who would buy the furniture contracts, and that Mr. Branson as representative of Richards and Conover Company attended the meeting; that this arrangement continued until August, 1949, at which time all of the assets of the Public Furniture Mart were turned over to the Wholesale Credit Men's Association to liquidate the business. After that date, because the note executed by defendant had not been paid, the criminal action was commenced.

The above summary of evidence is stated in its most favorable light to the state. This case is one very difficult for the court to decide. Our first impression was that the state had introduced sufficient evidence to justify and sustain a verdict of guilty under the statute, but we are bound by the rule of law laid down in the case of Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659, 662, wherein it is stated:

" 'A rule of strict construction is to be applied to criminal statutes and courts should not extend them to embrace acts or conduct not clearly included within the prohibitions of the statute.'

"In Little v. State, 55 Okla. Cr. 420, 32 P. 2d 94, 95, this court stated:

" 'Penal statutes cannot be enlarged by implication or extended by inference.

" 'Person cannot be convicted of crime unless act is within both letter and spirit of penal statute.' "

Under the statute hereinabove quoted it was necessary that the state prove that the defendant made a statement in writing which was false respecting the financial condition or means or ability to pay of the Public Furniture Mart. We do not feel that the check is a statement in writing concerning the financial condition of the Public Furniture Mart which is contemplated by the statute. The check herein is not a statement at all. We cannot help but conclude that the jury was more impressed with verbal representations made by the defendant in his conversation with the credit manager than with any false statement in writing which could be inferred from the giving of the check. If the conviction is to be sustained it would be because this court indulged an inference that a check is a statement in writing of the existing financial condition of the drawer of the check. It may be, as stated in the brief of counsel for defendant, that many business men have the practice of checking their bank balances daily and then making deposits as needed to care for earlier written checks. We have a bogus check statute, 21 O. S. § 1541, but evidently the prosecuting attorney thought the facts would not bring the case within terms of that statute. This may be true, but we do not feel that we should give the statute the strained interpretation which would be required to sustain a conviction upon the facts before us. Where it is doubtful as to whether the acts of an accused are of a criminal nature, the full benefit of such doubt should be given to one accused of crime.

The credit manager by his testimony showed that he was extending credit to the company of defendant based upon two considerations: First, the receipt of a check; Second, because of oral statements made by defendant in their conversations over the telephone. The check alone was not sufficient and would not have been accepted, according to the credit manager, if it had not been for the oral questions propounded to the defendant and the answers which he gave in the telephone conversations. Under those circumstances it may not be said that complainant hardware company extended credit on the basis of the alleged statement in writing in the form of a check. The hardware company was not induced to part with the gas range by anything stated in the check but according to the testimony of the credit manager it was induced to part .with the stove by the receiving by it of the check. It was not influenced by any statement in the face of the check.

It appears to us that the statement in writing contemplated by the statute in order to have sustained a conviction would have been a statement which would have led the hardware company to believe the maker of the check had a stronger or better financial condition or means or ability to pay than actually, in truth, existed at the time the check was given. In order to sustain the conviction this court would have to find that the financial condition or means to pay contemplated by the statute was: How much money have you on deposit, without consideration of any other financial condition of the person involved. We cannot place this interpretation on the statute as one could have a very limited bank account and yet a large amount of property or stocks or bonds or other cash assets which would show that he had plenty of means to pay. The facts in the case herein do not show any lack of financial condition or means to pay. The undisputed evidence shows that the Public Furniture Mart had been doing a large volume of business and had over nine thousand dollars worth of contracts in the hands of a finance company which suddenly turned them back, causing a financial strain on the defendant's company. The bank statement which was introduced in evidence showed that the Public Furniture Mart had only $4.01 on deposit at the close of business on the day the check was given but it had deposited $1,533 the day before and within the next three days it deposited $1,230 in various amounts and that it actually had a cash balance at the close of business four days later of $531.39. The credit manager of

the complainant hardware company together with representatives of other creditors met with the defendant, at which time he showed them the existing contracts which had been turned back to him by the Liberty Plan Company and they agreed to allow him further time in which to attempt to secure another financial connection to handle his contracts. They allowed him to operate his business for an additional six months, during which time one payment was made to the creditors on their accounts, and in August an assignment for the benefit of creditors was made because of the financial difficulties into which the business was thrown.

The burden of proof was upon the state to show the actual financial condition or lack of ability to pay on the part of the Public Furniture Mart, and the mere introduction in evidence of a check which had been given, upon which payment was refused on the day of presentation on account of insufficient funds to the credit of the maker, would not establish such proof.

Having come to the conclusion that the evidence was insufficient to sustain the conviction, it is ordered that the judgment of the court of common pleas of Oklahoma county be and the same is hereby reversed and the defendant is discharged.

BRETT, P. J., and POWELL, J., concur.