**Richard MORGAN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–490.**

Court of Criminal Appeals of Oklahoma.

Feb. 2, 1976.

J. C. Winterringer, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

On the evening of October 18, 1974, Dennis Dill, a narcotics investigator for Pottawatomie County, together with one Darrell Claudell, after having received thirty dollars from Detective Larry James, proceeded to the Humpty Dumpty parking lot on Kickapoo in Shawnee, Oklahoma, where, after pulling alongside the automobile of Richard Morgan, Darrell Claudell inquired if defendant Morgan had any marijuana for sale. Morgan replied that he did not have any with him, but for them to meet him later in the parking lot of the sports center on Kickapoo. Upon arriving at the sports center at 10:10 p. m., Mr. Dill got out of his car where he saw Morgan selling rolled up plastic bags to different people. Dill purchased a plastic bag of marijuana from Morgan for $10.00, and later turned it over to Detective Larry James. The chain of possession of the said marijuana was properly established and examined by Donald Flynt, a forensic chemist for the Oklahoma Bureau of Investigation who positively identified it as Cannabis sativa.

After making this purchase, Dill continued his undercover work investigating other sales and distribution, and when said investigations were completed, approximately fifty days after the alleged purchase from Morgan, Richard Morgan was arrested.

Morgan testified that he was twenty years old, and had been a user of marijuana for approximately two years. He recalled having seen Dill several times and stated that since Dill was with Claudell, he did not consider him to be a 'narc.' He recalled that there were some people present when Dill approached him, but did not recall whether he had sold or delivered any marijuana to them at the time. He further testified that he did not consider himself a dope pusher as he had shared in group purchases with other friends and that it was not uncommon to make a nonprofit transfer to members of the group from one to the other.

After his arrest, Morgan was charged by information in Pottawatomie County District Court, Case No. CRF–74–556, with the crime of Unlawful Delivery of Marijuana, in violation of 63 O.S.1971, § 2–401(B–2). The case proceeded to trial on February 11, 1975, and the jury, on February 12th, returned its verdict finding Morgan guilty and assessing his punishment at a term of two (2) years' imprisonment and a fine of One ($1.00) Dollar.

As his first assignment of error, Appellant asserts that the trial court erred in admitting evidence of the commission of crimes not charged in the information and in allowing the Assistant District Attorney to comment upon that evidence in argument to the jury.

It is significant that although the Assistant District Attorney, in his opening statement, stated:

"...  He will testify that about ten fifteen or so Dennis Dill went—parked

his car and went over to where he saw Ricky Morgan's car. And he saw several other people apparently give Ricky Morgan money and receive little plastic baggies that apparently contained marijuana. And then that Dennis Dill also gave Ricky Morgan a ten dollar bill and received a baggie containing some green, leafy substance . . ."

no objection was interposed at that time; however, in the transcript, appearing at page 48, the following appears:

"A. I then also pulled up to the parking lot, got out of my car and walked over to Mr. Morgan's car.

Q. What did you see as you walked over there?

A. I saw Mr. Morgan selling rolled up plastic bags to different people there. I believe there was approximately three other people, one female and two white males. And I then waited, and this one white male—

MR. OWEN: Now, just a minute, your Honor. We're going to this as not part of the Information and not part of the Complaint in this cause. He's volunteering information that is prejudicial and inflammatory.

THE COURT: Overruled.

MR. OWEN: Show an exception, if you would."

During the closing argument of the Assistant District Attorney, appearing at pages 164 and 165, the following appears:

"MR. RICHARDS: I don't think there is any real dispute or real problem— again in my mind, I don't see any problem with the evidence in the case as far as proving this defendant distributing marijuana to Dennis Dill. As a matter of fact, there is several other people on the night of October 18th, and he—

MR. OWEN: Now, just a minute, your Honor. We're going to move for a mistrial if he is going to continue to make

those wild statements. Now, he's tried on one—

THE COURT: Just a minute. Come up here and make the record.

(the following proceedings occurred at the bench out of the hearing of the jury.)

MR. OWEN: Comes now the defendant and moves for a mistrial for the reason that the flagrant use and the prejudicial language in reference to other offenses made by counsel makes it impossible to have a fair trial in this cause.

THE COURT: Motion for mistrial is denied for the reason that there is admissible evidence in the case of distribution to other persons on the same night and the same instance as this offense, and, therefore, it's proper for the State to comment on the admissible evidence in the case.

MR. OWEN: Show an exception."

Under this assignment of error the Appellant cites *Roulston v. State,* Okl.Cr., 307 P.2d 861 (1957), and cases cited therein, wherein it was stated:

". . . [E]vidence of a separate and similar offense is not admissible against the accused on trial for another specific offense; that, when the accused is put on trial for one offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone and proof of guilt of one or more similar offenses unconnected for that which he is on trial must be excluded . . ."

Appellant further relies on *Byers v. State,* 78 Okl.Cr. 267, 147 P.2d 185 (1944):

". . . If the trial court is uncertain as to the admissibility of such evidence, he should give the benefit of such doubt to the defendant as it is manifestly unfair to the accused to force him to prepare to defend himself against any collateral crime other than the one charged against him in the information. Juries are too prone, when such other offenses

are admitted in evidence, to find an accused guilty of the crime charged merely because he might have committed some other offense."

██ While undeniably the rule enunciated in *Roulston* and *Byers,* supra, succinctly set forth the law as applied to the facts and circumstances of those cases, we are of the opinion that the testimony here complained of falls squarely within the fourth paragraph of the Syllabus of *Roulston,* supra, wherein it is stated:

"Evidence of other crimes in order to be admissible must come within one of the well-recognized exceptions to the rule. That it tends to establish (1) Motive, (2) Intent, (3) The absence of mistake or accident, (4) A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and, (5) The identity of a person charged with the commission of the crime on trial."

██ Having concluded that the testimony relating to other sales made contemporaneous with the unlawful delivery in the instant case, we are of the opinion that the remarks of the prosecuting attorney during closing argument were a fair comment on the evidence which had been properly presented for the jury's consideration. We have repeatedly held that:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom."

See *Harvell v. State,* Okl.Cr., 395 P.2d 331 (1964); *Mooney v. State,* Okl.Cr., 273 P. 2d 768 (1954); and *Disheroon v. State,* Okl.Cr., 357 P.2d 236 (1961).

This leads us to a consideration of Appellant's second assignment of error that the trial court erred in refusing to allow Appellant to reopen its case for the purpose of producing testimony concerning a lesser included offense. At the outset we observe that when the State had rested, counsel for defense made his opening statement in which he relied heavily on the defense of entrapment. Such, indeed, was the direction taken by defense counsel when the Appellant testified in his own behalf. After the defense had rested, the State was uncertain as to whether it would offer rebuttal testimony. During the recess, as reflected by the record, which we will quote more fully, the court directed and submitted to both counsel, and received from them, the requested instructions. The court apparently indicated at that time he would not instruct the jury on the misdemeanor offense of possession. When the court resumed after recess, the following appears in the record at pages 156 and 157:

"MR. OWEN: At this time, your Honor, the defendant requests to briefly reopen his case for the purpose of clarifying an ambiguous point. I would like to put the defendant back on the stand for a question or two.

THE COURT: Well, the request comes too late after the State has rested. You announced that you rested before noon, and now—

MR. OWEN: At that time, however, your Honor, I was inadvertently misled by the State reserving its right to reopen, and—

THE COURT: Well, that wasn't the reservation, the right to reopen. They just stated that they didn't know whether they would have any rebuttal testimony, and we let them make their announcement after the noon hour, and they made the announcement that they rested.

MR. OWEN: Well, by that lagging permission that you gave him, I thought I would have to wait until they got all through to make that request. I advised your Honor that I would want to reopen

in all probability, depending on the type of instructions that were given.

THE COURT: Well, that's the reason the Court won't let you reopen. We discussed the instructions, and from what you indicated to the Court this morning, you want to reopen to bring your testimony back within the instructions the Court has given now. After the Court has committed itself on the instructions, and since counsel has a copy of the instructions, and that's not a proper reason to reopen."

■ The Appellant relies on the case of *Traeger v. State,* Okl.Cr., 521 P.2d 399 (1974). We are of the opinion that *Traeger* is clearly distinguishable from the instant case. In *Traeger* the defense rested without presenting any evidence and subsequently moved to reopen and present the defendant's testimony in his own defense. The Court there stated:

"In the instant case it is apparent from the record that, should the trial court have granted leave to reopen, the only witness to be called was the defendant; it was still early in the afternoon; the State could have no way been prejudiced; and justice would have been served. . . ."

In the case before us, the Appellant had every opportunity to present all the testimony he wished to present while on the stand, and before the State rested, but after reviewing the court's instructions, the Appellant then apparently realizing that his defense of entrapment was indeed very weak and the proof of Appellant's guilt evident, sought to embark on a new defense which could have only been an admission of possession and denial of distribution. Under these circumstances we follow the rule that the reopening of a case is within the sound discretion of the trial court, and unless an abuse of that discretion clearly appears, no question is presented for review on appeal. See *Lewis v. State,* Okl. Cr., 458 P.2d 309 (1969); *Jones v. State,* Okl.Cr., 453 P.2d 319 (1969); and *Sowle v. State,* Okl.Cr., 424 P.2d 993 (1967).

■ Finding no abuse of discretion, we are of the opinion that this assignment of error is without merit.

■ As his third assignment of error Appellant urges that the trial court erred in failing to give his requested instruction No. 2, which provides:

"You are instructed that an included offense is the misdemeanor crime of Possession of Marihuana and the same is punishable by a sentence in the county jail not to exceed one year."

In support of his contention, he cites *Harris v. State,* Okl.Cr., 291 P.2d 372 (1955). After carefully examining the record before us, we are of the opinion that the court was fully justified in denying the requested instruction, for under the testimony presented, Appellant was guilty of delivery of marijuana, or not guilty.

■ It is lastly contended that the trial court erred in failing to delay sentencing pending the receipt of a pre-sentence investigation report. In support of this contention he cites the provisions of 57 O.S. Supp.1974, § 519, which provide:

"Effective January 1, 1975, whenever a person is convicted of a felony, except when the death sentence is imposed, the court shall, before imposing sentence to commit any felon to incarceration by the Department of Corrections in any penal institution, order a presentence investigation to be made by the Division of Community Services of the Department. The Division shall thereupon inquire into the circumstances of the offense, and the criminal record, social history and present condition of the convicted person; and shall make a report of such investigation to the court, including a recommendation as to appropriate sentence, and specifically a recommendation for or against probation. Such reports must be presented to the judge so requesting, within a reasonable time, and upon the failure to so present the same, the judge may proceed with sentencing. Whenever, in the opinion of the court or the

Division it is desirable, the investigation shall include a physical and mental examination of the convicted person. The reports so received shall not be referred to, or be considered, in any appeal proceedings, and such reports shall be confidential with the judge so making the request; except that the portion dealing with the factual aspects of the report may be reviewed by the district attorney or defendant upon proper cause, within the discretion of the judge."

We are of the opinion that although the terms of 57 O.S.Supp.1974, § 519 appear to be mandatory, it is unnecessary to reach that issue in this case since at the time the Appellant was sentenced the Legislature expressly prohibited the court from suspending, deferring, or granting probation. We do not believe that the Legislature intended the court to do a vain and useless thing and that it was not the Legislative intent to require pre-sentence reports in such cases at that time.

Since the uncontroverted testimony of the Appellant would indicate that he has never suffered any prior convictions relating to the charge of which he stands convicted, we call counsel's attention to *Lampe v. State*, Okl.Cr., 540 P.2d 590 (1975), wherein we stated:

"... Upon proper application to the trial court, the trial judge, within the legislative authorized discretion may: (1) vacate the judgment and sentence and defer sentencing under the provisions of 22 O.S.1971, § 991c; (2) suspend execution of the judgment and sentence under the provisions of 22 O.S.1971, § 991a; or, (3) deny the application."

For all of the above and foregoing reasons, the judgment and sentence appealed from is *affirmed*.

BRETT, P. J., and BLISS, J., concur.